ELIZABETH NEILL, by her next friend, *v.* ROBERT NEILL.

1. GUARDIAN : INVENTORY.—The guardian of a lunatic must return in his inventory of his ward's estate, an indebtedness due by him to the ward, which accrued previous to his appointment.

2. LEX-LOCI : INTEREST.—If a trustee receive money in a foreign State for his *cestui que trust*, residing in this State, and apply the same to his own use, he must account for interest according to the laws of the place where it was received.

APPEAL from the Probate Court of Noxuba county. Hon. Reuben Ruff, judge.

The facts are accurately stated in the brief of appellant's counsel.

*Reavis,* for appellant.

The material facts shown by the record, to which the assignment of errors relates, are these:

Elizabeth Neill, by her next friend, filed a petition in the Probate Court of Noxuba county, alleging that she was *non compos mentis,* and for that reason had been put by said court under the guardianship of Robert Neill, who had duly qualified as her guardian; that said Robert Neill, on the 22d of August, 1846, as her attorney, had received from the administrator of her father's estate, on a final settlement in the Orphans' Court of Sumter county, Alabama, the sum of $2507 92, as would appear from a transcript from the records of said court, filed with, and as a part of the petition; that this sum had been received by him, in the State of Alabama, where the rate of interest was eight per cent.; that after said Robert was appointed her guardian, he rendered to said court an inventory of her estate, in which he only reported as due her from him, the sum of $2105 55, when he should have reported said sum of $2507 92, with interest thereon from the time he received it; and that she was advised he was not liable to account for interest on said money, after he became her guardian, without consenting to take it on interest, or an order of the court, to place the same at interest.

The petition also shows, that the money was received before said Robert became guardian of the petitioner; and the transcript filed as part of it, shows the receipt of the amount, as alleged.

To this petition he filed his answer, insisting that he was appointed guardian of the petitioner in August, 1853; and that he was not amenable to the court for any thing he had done as attorney for the petitioner, because, at the time the acts were performed, he was not an officer of the court, and denying "that he ought to have charged himself with $2507 92, with interest, as alleged by

petitioner;" and insisting, "that he charged himself with the proper amount, to wit, the sum of $2105 55, the whole amount that was ever in his hands belonging to said ward, *since he qualified as her guardian as aforesaid.*"

The cause was set for a hearing, and heard on the petition and exhibit (the transcript) of the petitioner, and the answer of the defendant; and on the hearing, the court rendered a decree, directing the defendant to charge himself with interest, at the rate of eight per cent. per annum, on the sum of $2105 55, from the time he became guardian; and dismissing the petition as to all other matters, at the costs of the petitioner.

From this decree the petitioner has appealed, and insists that it is erroneous; first, because part of the relief prayed for was granted, and yet costs were decreed against the petitioner; secondly, because the court refused to direct the defendant to report in his inventory, or charge himself with, the sum of $2407 92, and interest thereon, from the time he received it until he became guardian; and thirdly, because the court refused to direct the defendant to keep the money, and pay interest on it, or lend it at interest.

1. The decree directing the defendant to charge himself with interest at eight per cent. on the money, is a judgment in favor of the plaintiff, and carries full costs against the defendant. Hutch. Code, 876, § 74.

2. The transcript, which was acted on by the court as evidence without objection, shows that the defendant, on the 22d of August, 1846, received from Robert Harkness, the administrator of the estate of the petitioner's father, the sum of $2507 92, which had been decreed to her on a final settlement of the estate, in the Orphans' Court of Sumter county, Alabama. This would be sufficient evidence to overcome an express denial of the reception of the amount, as alleged, if such a denial were in the answer. The answer, however, does not deny the allegation, but merely denies that the defendant "ought to have *charged* himself with" that amount. Besides, the allegation in the petition, that he received the sum of $2507 92, in Alabama, on the 22d of August, 1846, is an allegation of a fact which must have been within the knowledge of the defendant, if it existed at all, and he neither

admits nor denies it. It must therefore be taken as admitted. 2 Dan. Ch. Prac. 977, note 2; *Kirkman* v. *Vanlier*, 7 Alabama, R. 217; *Lyon* v. *Bolling*, 14 Ib. 754; *Thorington* v. *Carson*, 1 Porter, R. 257; *Bank of Mobile* v. *P. & M. Bank*, 8 Alabama, R. 772. The record, therefore, clearly shows (and it is admitted in the brief for the defendant) that that sum was received by the defendant, for the petitioner, at the time alleged in the petition, and before he became her guardian; and the question is, whether he is accountable for it.

It is insisted for the defendant that he is not chargeable, because he received the money out of the jurisdiction of the court before he became guardian, and has not given it in, or reported it as assets. There does not seem to be any force in this objection. By receiving the money in Alabama, before he became guardian, he either held it as the property of the petitioner, or became her debtor for it. In either event, when he became guardian, the statute required him to make a full report of it in his inventory of her estate. Hutch. Code, 506, § 136. And the object of the petition is to compel him to do so. Besides, if he were her debtor for the money, it was so much cash in his hands, as soon as he became guardian; for the statute required him to sue for and recover all debts due her. Ib. 507, § 137. Being himself a debtor of his ward, he could not sue himself, and, consequently, is chargeable with the amount of his indebtedness, as cash.

3. The court ought to have directed the defendant, to keep the money, and pay interest upon it, or to lend it out at interest, according to the prayer of the petition. *Austin* v. *Lamar*, 1 Cushm. R. 189; *Brown* v. *Mullins*, 2 Ib. 204.

*Israel Welsh* and *Gray* and *Gray*, for appellees.

This is an attempt to charge the defendant in error with certain money, alleged to have been received by him, in the State of Alabama, in 1846, previous to his appointment as guardian of Elizabeth Neill, which money he has never "reported or given in to the Probate Court." The court below refused to charge him with said money, and this is insisted upon as error. In support of the decree of the Probate Court, we cite Hutchinson's Code,

663, §§ 88, 89.   It will be observed, that this statute requires that *executors, administrators,* and *collectors,* shall "report or give in to the Probate Court," debts which were due from them to the deceased, but does not embrace guardians within its provisions. It only provides for charging the administrators, executor, or collector, with a debt which was subsisting at the time of the death of the testator or intestate, and that too, not until it has been "reported or given in to the Probate Court," or established in the manner indicated by the statute; until this has been done, it is insisted that it is not assets within the jurisdiction of the Probate Court, with which even an executor, administrator, or collector, could be charged.   We cite *Kelsey* v. *Smith,* 1 How. 68; *Satter-white* v. *Littlefield,* 13 S. & M. 305; and *Franks* v. *Wanger,* 25 Miss. R. 123; as touching on the point involved in this controversy.

FISHER, J., delivered the opinion of the court.

The appellant, by her next friend, filed her petition in the Probate Court of Noxuba County, alleging among other things, that the appellee was in 1853, by the said court appointed her guardian; she being then a lunatic.   That her said guardian has failed to make a true and perfect inventory of her estate, &c.   The object of the petition is to compel him to make such inventory, and either to take the money himself at interest, or to put the same at interest, on good security.

The facts as shown by the petition and proof are these.   The appellee in 1846, received as the attorney in fact of the petitioner, the sum of $2507 92, due to the petitioner from the estate of her father; of this sum he only offers to account for and inventory the sum of $2105 without interest, and the court below decided that he was only liable to this extent.   The position assumed in behalf of the guardian is, that as he was not guardian of the petitioner during the period between 1846 and 1853, while the money was in his hands, he cannot be compelled to account to the Probate Court for the same, or in other words, the court must be satisfied with such inventory as the guardian may choose to make.   This position is wholly untenable.   It is true, he is not accountable as guardian during the above period of time; but he must still make

a true inventory of the ward's estate, and the question is, what is a true inventory? The answer is, that which includes the whole estate under the jurisdiction of the guardian. Being himself the ward's debtor, he must account to the court, according to his legal liability, or to the same extent that the ward could compel him to account, if she were mentally capable of asserting her rights. When he received her money he became her debtor, and retaining it in his hands, or failing to pay it over to her, the law fixed his liability in this respect, and declared that being a debtor in default, in discharging his obligation, he must pay interest until the obligation should be discharged.

We are therefore of opinion, that the court below erred, and that the guardian ought to be held liable for the said sum of $2507 92, and interest thereon, from the time he received the money, at eight per cent. per annum, according to the laws of Alabama, to the present time. The other question is almost a matter of course. The guardian must either agree to pay interest on the money, or place it at interest.

In conclusion we will merely remark, that the guardian is entitled to any just or legal set-off for services rendered to the ward, or expenses necessarily incurred in her behalf while the money was in his hands.

Decree reversed; and decree directed to be made in the court below, according to the principles settled by this opinion; and judgment in both courts against the appellee for costs.