MARTIN, Appellant, vs. DAVIS and another, Respondents.

*October 5 — October 20, 1891.*

*Guardian and ward: Payment by guardian to successor: Assumption of liability by second guardian: Suretyship.*

1. B. was guardian of E. and G., minor brothers, and invested their money in the dry goods business. When E. became of age he took the stock of goods and the business, releasing his claim against B. and agreeing to assume B.'s liability as guardian of G. Afterwards B. resigned his guardianship of G., and E. was appointed guardian, and filed an inventory charging himself with having received from B. the amount due to G., and gave B. a receipt therefor. *Held,* that E.'s agreement to assume the liability of B. to G. created a valid obligation on his part, which was not affected by the statute of frauds. If assent on the part of G. was necessary, his prosecution of the claim on the settlement of E.'s final account as guardian was sufficient to make E.'s liability absolute; and this liability is covered by his bond as guardian.

2. The former guardian, B., not having turned over to E. any of the property of G., his liability and that of the sureties on his bond was not affected by the transaction.

APPEAL from the Circuit Court for *Richland* County.

There is no material dispute as to the facts of the case. Respondents were sureties upon the bond of one Edward E. Martin, as guardian of the appellant. Said guardian was appointed and the bond given September 23, 1886. Prior to that date, and from April 23, 1884, one J. C. Bancroft had been guardian of the appellant. Bancroft, during his guardianship, received about $900 in cash, the property of his said ward, which he invested in the dry goods business. Bancroft was also guardian of Edward E. Martin, and had received about $2,900 in cash, the property of said Edward, which was also invested by him in the dry goods business with the $900 belonging to *George.*

Edward became of age in August, 1885, and immediately thereafter Bancroft turned over to Edward the dry goods stock and business, Edward accepting the same in settlement of his own claim, and verbally agreeing to assume Bancroft's liability as guardian to *George.* This stock was then valued by the parties at $5,000, subject to some debts, the exact amount of which does not appear, but which seems to have been about $1,000. Bancroft remained guardian of *George* until September, 1886, when he resigned, and Edward was appointed. Immediately upon his appointment Edward filed an inventory in the county court, in which he charged himself with having received from Bancroft, for his ward, $912.72, and gave a receipt to Bancroft for that sum. In fact, however, he had received nothing from Bancroft except the stock of goods, more than a year before. Edward carried on the dry goods business until December, 1886, when he failed, and the stock was seized by his creditors, and sold on execution.

*George*, the appellant, became of age May 16, 1888. In October, 1888, Edward filed his final account of his guardianship, in which he charged himself with $912.72, according to his inventory, and simple interest thereon, amounting

in all to $1,018.87, and claimed no credits.  Upon the hear-
ing of that account, the respondents appeared and objected
to its allowance, but the county court adjudged that the
guardian had received the sum with which he had charged
himself, and directed him to pay it to the ward.  From
this judgment the respondents appealed to the circuit court,
which reversed the judgment of the county court as against
the sureties, and found that the guardian's acknowledgment
of the receipt of $912.72 from Bancroft was collusive and
fraudulent as to the sureties, and that the guardian had in
fact received no property of his ward, and was not charge-
able with any sum for which his sureties were responsible.
From this judgment *George* appeals.

For the appellant there was a brief by *L. H. Bancroft*,
and oral argument by *Mr. Bancroft* and *Mr. H. W. Chy-
noweth*.

For the respondents there was a brief by *James H. Miner*
and *P. H. Fay*, and oral argument by *Mr. Miner*.

WINSLOW, J.   We think the circuit judge was right in
his conclusion that Edward had never received any prop-
erty of his ward.   The former guardian, Bancroft, had no
right to put his ward's money into trade.   When he did so
he converted his ward's estate and became personally lia-
ble for the amount.   The goods bought did not become the
property of the ward.  The ward, when he became of age,
could demand his money, or he could elect to take the prop-
erty which his money had purchased, if still in the hands
of his guardian, together with the profits of the trade, if
any.   Until such election, the title to the property pur-
chased was in the guardian.   It follows, logically, that
when J. C. Bancroft turned over this stock of goods to
Edward Martin, he did not turn over to him any of his
ward's property.

There is another aspect of the case, however, which we

think was overlooked by the circuit court. It is a well-settled principle of law that when one assumes the office of guardian who is at the time indebted to his ward, the indebtedness becomes assets in his hands, to be accounted for as property. *Winship v. Bass*, 12 Mass. 203; *Neill v. Neill*, 31 Miss. 36; *Griffin v. Bonham*, 9 Rich. Eq. 77. Bancroft owned this stock of goods. He, in effect, sold them to Edward in consideration of a release of his liability as guardian of Edward, and the assumption by Edward of Bancroft's liability to *George*. This created a valid obligation on Edward's part to pay *George*, which was not affected by the statute of frauds. *Hoile v. Bailey*, 58 Wis. 434.

If assent on the part of *George* was necessary in order to make Edward's obligation binding, still there was, at the time this bond was given, an inchoate or contingent liability on the part of Edward, subject to be made absolute by *George* when he became of age. Did not the bond cover this liability of the principal? It provides that Edward shall pay over and deliver all moneys, estate, and effects remaining in his hands, *or due on final settlement*, to the person or persons legally entitled thereto. By prosecuting this claim the ward has certainly assented to the transaction between Edward and Bancroft. He has made the moneys in question due from his guardian on final settlement and covered by the bond. It is not to be understood that by this decision we have held the first guardian, Bancroft, or his sureties, discharged from liability. Their liability to the ward was not affected by the transaction. The ward simply acquired an additional remedy against Edward and his bondsmen.

*By the Court.*— The judgment of the circuit court is reversed, and the action is remanded to the circuit court with directions to affirm the judgment of the county court.