BROVAN, Respondent, vs. KYLE, Appellant, and another, imp., Respondent.

*November 15—December 4, 1917.*

*Guardian and ward: Conversion: Liability of surety on guardian's bond: Subrogation: Parties: Bringing in person ultimately liable: Banks and banking: Check payable to guardian: Deposit to his individual account: Title to fund: Notice of trust: Following trust fund: Election.*

1. A surety on a guardian's bond, if held liable thereon, is *pro tanto* subrogated to the rights of the ward, and may follow the property of the ward's estate into whosesoever hands it has wrongfully come.

2. A guardian presented for deposit to his individual account in a bank a check payable to and indorsed by him as guardian, which in fact belonged to his ward. He received credit for the amount and thereupon by check upon said account paid his individual debt to the bank upon a note secured by collateral, and received back the note and collateral. Afterwards the guardian died insolvent and indebted to the estate of the ward. In an action upon his bond a surety applied to have the bank made a defendant, stating the above facts by affidavit and claiming that if he was liable the bank would be liable to him. *Held*, that under sec. 2610, Stats., the court properly granted the application.

3. When the check payable to the guardian as such was presented, the bank was chargeable with knowledge of the fact that the guardian held the fund represented thereby in a trust capacity only and that such fund belonged to the ward, even though it did not know who the ward was; and, being so charged with knowledge of the trust character of the fund, the bank could

not lawfully receive any part thereof in payment of the personal obligation of the guardian to it.

4. Not only the equitable ownership but also the legal title to the trust fund represented by the check payable to the guardian was in the ward, and upon the death of the ward the title would pass to her legal representative when appointed.

5. One who profits by the known conversion of a trust fund must make restitution to the owner of the fund to the extent of such profit if a loss equal thereto or greater results from the conversion.

[6. On the question whether, if a bank permits trust funds to be deposited to the individual credit of the trustee, the bank is liable if a loss ensues, even though it does not receive any portion of the money so deposited, no opinion is expressed.]

7. The fact that when the guardian paid his note to the bank with the proceeds of the check he received back the collateral which secured the note, does not show a purchase of the collateral for the ward's estate and that therefore there was no conversion of the trust fund.

8. Even if the ward, plaintiff in the action, was not obliged to follow the proceeds of the check so converted by the guardian in contravention of his duties, she might elect to do so, and the bank which received such proceeds with notice of the trust cannot challenge such right of election.

APPEAL from a judgment of the circuit court for Dunn county: GEORGE THOMPSON, Circuit Judge. *Reversed as to one defendant.*

Action against the sureties upon a guardian's bond. One Carroll Lucas was appointed guardian of the estate of plaintiff and *John Kyle* and George Kyle signed his bond as sureties. Lucas died insolvent and indebted to the estate of his ward in the sum of $719.97 with interest thereon at six per cent. from January 1, 1912. George Kyle was also dead, and one E. J. Bates, the administrator of his estate, was made a party defendant. The defendant *John Kyle* petitioned the court, pursuant to the provisions of sec. 2610, Stats. 1915, to make the *Bank of Menomonie* a defendant on the ground that if plaintiff recovered the bank would be liable to him for the amount of such recovery or a substantial part thereof. The court granted the petition. The trial

resulted in a judgment in favor of plaintiff for $719.97 and costs against the defendants *John Kyle* and E. J. Bates as administrator of the estate of George Kyle, and in a dismissal upon the merits with costs as against the *Bank of Menomonie*. From such a judgment the defendant *John Kyle* appealed.

For the appellant there was a brief by *J. R. Mathews* and *R. E. Bundy* of Menomonie and *Varnum & Kirk* of Hudson, and oral argument by *N. O. Varnum*.

For the respondent *Brovan* there was a brief by *W. E. Plummer* of Durand.

For the respondent *Bank of Menomonie* there was a brief by *Freeman & Freeman* of Menomonie, and oral argument by *Charles E. Freeman*.

VINJE, J. For some years prior to March 20, 1911, Carroll Lucas had kept an individual deposit account with the *Bank of Menomonie,* which on the date mentioned amounted to $6.80. He that day presented to the cashier of the bank a check for deposit to his individual account for $1,250 payable to Carroll Lucas, Guardian, and indorsed "Carroll Lucas, Guardian." The cashier took note of the fact that Carroll Lucas, Guardian, was the payee, and of the form of the indorsement, and credited the amount of the check, afterwards collected by the bank, to Lucas' individual account. The check in fact belonged to Lucas' ward, the plaintiff herein. Lucas was indebted to the bank in the sum of $700 on a note secured by collateral of equal amount and value. He drew a check for $850 payable to the bank and received his note and collateral and $150 in cash. The check for $850 was charged to his individual account. These transactions all took place with the cashier of the bank on the same day and immediately after the deposit of the $1,250 check. It was claimed by the appellant in his affidavit for bringing in the defendant bank that if he was liable the bank would be

liable to him.    Upon such a showing there was no abuse of
discretion in joining the bank as a defendant in the action.
Sec. 2610, Stats. 1915, expressly provides for just such a
situation.    So far as applicable to this case it reads:

"A defendant who shows by affidavit that if he be held li-
able in the action he will have a right of action against a
third person not a party to the action for the amount of the
recovery against him, may, upon due notice to such person
and to the opposing party, apply to the court for an order
making such third person a party defendant in order that
the rights of all the parties may be finally settled in one ac-
tion, and the court may in its discretion make such order."

No argument is needed to show the application of the sec-
tion to the facts in this case.    The court properly granted
the order making the bank a party defendant; for a surety
on a guardian's bond, if held liable thereon, is *pro tanto* sub-
rogated to the rights of his ward and may follow the prop-
erty of the ward's estate into whosesoever hands it has wrong-
fully come.    *Boyle v. Northwestern Nat. Bank,* 125 Wis.
498, 103 N. W. 1123, 104 N. W. 917; *Emigh v. Earling,*
134 Wis. 565, 115 N. W. 128; *United States F. & G. Co. v.
Adoue,* 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L.
R. A. N. s. 409 and note; 12 Ruling Case Law, 1172.

The trial court found that the bank acted in good faith and
lawfully received payment of Lucas' debt to it from the pro-
ceeds of the check.    That the cashier believed the bank had
the right to receive payment from the trust fund and was
guilty of no intentional fraud may be admitted so far as this
particular transaction is concerned.    But that does not reach
the real question at issue, namely, Ought not the bank, from
the evidence before it, to be held as a matter of law to have
had notice of the trust character of the fund and that it
could not lawfully receive payment of Lucas' debt out of it?
The word "guardian" is a well understood word of common
speech and implies to the average lay mind that a fund held

in the capacity of a guardian does not belong to the guardian but to the ward. We speak here of the equitable ownership, not of the technical legal title. The former alone is of importance in this case. But even the legal title to the fund represented by the check was in the ward and not in the guardian, and upon the death of the ward title thereto passes to his legal representative when appointed. *Glasspoole v. McGuine,* 143 Wis. 294, 127 N. W. 997; *Rollins v. Marsh,* 128 Mass. 116; 12 Ruling Case Law, 1123. The guardian holds the estate of his ward only in a trust capacity. *Person v. Merrick,* 5 Wis. 231; *Abrams v. United States F. & G. Co.* 127 Wis. 579, 106 N. W. 1091. The cashier, therefore, when a check was presented to him for payment to Lucas, Guardian, was chargeable with knowledge of the fact that Lucas held the fund thereby represented in a trust capacity only, and that such fund belonged to Lucas' ward. The fact that the cashier did not know who the ward was is immaterial. Being charged with knowledge of the trust character of the fund the bank could not lawfully receive any portion thereof in payment of the personal obligation of Lucas to it. *Boyle v. Northwestern Nat. Bank,* 125 Wis. 498, 103 N. W. 1123, 104 N. W. 917, and note in 1 L. R. A. N. s. 1110; 7 Corp. Jur. 644; 3 Ruling Case Law, 551; 12 Ruling Case Law, 1172; *Allen v. Puritan T. Co.* 211 Mass. 409 (97 N. E. 916) and cases cited on p. 422. See, also, valuable note to this case in L. R. A. 1915C, 518, where the authorities on the subject are collected, and notes in 52 L. R. A. 790, and 10 L. R. A. N. s. 706. Nor did the fact that the check was deposited to the personal account of Lucas change the trust character of the fund. *Boyle v. Northwestern Nat. Bank,* 125 Wis. 498, 103 N. W. 1123, 104 N. W. 917; *Emigh v. Earling,* 134 Wis. 565, 115 N. W. 128; 7 Corp. Jur. 644.

Some courts have gone so far as to hold that if a bank permits trust funds to be deposited to the individual credit of

the trustee the bank is liable if a loss ensues, even though the bank does not receive any portion of the money so deposited. *Duckett v. Nat. M. Bank,* 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84 and note. It is not necessary to pass upon that situation here, and we express no opinion as to the soundness of such a rule. In this case the bank profited by a known conversion of the trust fund, and so it placed itself squarely within the principle that any one who profits by the known conversion of a trust fund must make restitution to the owners of the fund to the extent of such profit if a loss equal or greater thereto results from the conversion.

Some claim is made that when Lucas paid the bank the $700 he bought from it for plaintiff's estate the collateral deposited to secure his note, and therefore there was no conversion of the trust fund. The statement of the claim is a sufficient negation thereof. So, too, the argument that plaintiff was not obliged to look to the proceeds of this check because her estate had been converted into this fund in contravention of the duties of a former guardian, is not well founded. Even if she was not obliged to follow it she could elect to do so (*Martin v. Davis,* 80 Wis. 376, 50 N. W. 171), and she has done so. The defendant bank is in no position to challenge such right of election. The bank received $700 from Lucas as guardian on March 20, 1911. The default of Lucas was $719.97 with interest from January 1, 1912, at six per cent. Interest on $700 from March 20, 1911, to January 1, 1912, at six per cent would amount to more than $719.97. Plaintiff is therefore entitled to judgment against the *Bank of Menomonie* in the full amount of the loss to her estate, namely, $719.97 with interest thereon from January 1, 1912, at six per cent.

*By the Court.*—Judgment reversed as to the defendant the *Bank of Menomonie* only, and the cause remanded with directions to enter judgment in favor of plaintiff against said defendant bank in the sum of $719.97 with interest thereon

from January 1, 1912, at six per cent. per annum, and costs; with costs in this court in favor of the appellant, *John Kyle,* against said defendant *Bank of Menomonie.*