Dellie G. Titcomb *vs.* Ferdinand Richter et als.

First Judicial District, Hartford, January Term, 1915.
Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

One who merely receives another's money to invest, so that it will yield a larger income, is an agent and not a trustee.

Those who knowingly aid an agent or trustee in diverting property from the purpose for which he holds it, are accountable for it if it can be traced to their possession.

Although buying and selling stock on margins is a lawful business for a broker, provided the transactions are actual purchases and sales, yet since an agent, given money to invest, is not thereby authorized to use it in speculations of that sort, a broker who, knowing him to be such, assists him therein, is responsible to the principal for any loss. But where, as in the present case, there is no evidence that the defendant brokers had actual knowledge of the agency, and the facts established by the evidence are not such as to impute knowledge to them, they cannot be held responsible for losses incurred in such speculation.

Where securities show on their face that they belong to a trust estate, one who receives them is charged with knowledge of such fact; but the mere opening of an account with a banker or broker, by a person in his own name as "trustee" or "agent," does not put the depositary upon inquiry as to whether the fund was in fact the property of another, since it is not unusual for a person to so deposit his own money.

Argued January 12th—decided March 26th, 1915.

Action for an accounting of trust funds placed by the plaintiff's alleged trustee in the hands of the defendants as stockbrokers and used by them in stock margin speculations, and for damages for the losses incurred thereby, brought to the Superior Court in Hartford County where the plaintiff was nonsuited in a trial to the court, *Gager, J.*, and from the court's refusal to set aside said judgment she appealed. *No error.*

*Josiah H. Peck,* for the appellant (plaintiff).

*Edward M. Day,* with whom was *Lawrence A. Howard,* for the appellees (defendants).

THAYER, J. The plaintiff in her complaint alleges that in January, 1909, she placed in the hands of one Morris certain property, and authorized and instructed him to sell it and hold the proceeds thereof as trustee for the benefit of herself, and to invest said proceeds in legal and proper investments as trustee aforesaid; that shortly thereafter Morris sold the property as authorized and instructed by her and received therefor about $25,000; that he deposited a portion of this money with the defendants and had numerous transactions with them, the details of which are unknown to her, except that they purported to be purchases and sales by said Morris, as trustee, through the agency of the defendants, of shares of the capital stock of sundry corporations, said transactions being of the character commonly called "purchases and sales on a margin"; and that a portion of the money held by Morris in trust for the plaintiff as aforesaid was used in said purchases, "but whether said transactions were actual purchases and sales of stock, or whether they were colorable and in fact mere gambling upon the rise and fall of the market price of stock, is to the plaintiff unknown." She further alleges that on these transactions the defendants charged Morris, as trustee, large commissions, which he paid to them from the moneys held by him in trust; that these transactions were wholly unknown to and unauthorized by her; and that, during the period covered by the transactions, the defendants knew that the moneys so deposited with them were moneys held by Morris as trustee, and knew or might have known, by reasonable and proper inquiry, that said trust was for the benefit of the plaintiff, and that the transactions were wholly unauthorized by her. As

the result of these transactions, it is alleged that there
was lost from the trust estate the sum of $25,000.

Under an answer which left upon the plaintiff the
burden of proving all the material allegations of the
complaint (except that the purchases and sales of stock
upon the usual commission charged to customers were
admitted), and in which it was alleged that all the
transactions between the defendants and Morris were
actual purchases and sales, the plaintiff offered evi-
dence from which the court could have found that in
January, 1909, Morris represented to the plaintiff that
if she would sell certain real estate and personal prop-
erty which she then owned he could invest the proceeds
for her so that they would bring in a larger income; that
she authorized him to sell it for her, which was done,
and the proceeds were paid to her by the purchasers;
and that she indorsed the checks, which she received in
payment, over to him to invest for her so that she might
receive a larger income.  These checks Morris depos-
ited in a trust company to his own account. . Soon
after, he opened an account with the defendants by
depositing his personal check on the trust company
with them, telling them to open the account in his name
as trustee, and the account was opened in the name
"Charles E. Morris, Trustee."  During the period cov-
ered by the transactions now in question, monthly ac-
counts between themselves and "Charles E. Morris,
Trustee," were rendered by the defendants to Morris,
the account being balanced and closed on May 6th,
1910.

It is apparent that the plaintiff failed to prove the
allegation that she placed the proceeds of the sale of
her property in the hands of Morris to hold as her
trustee and to invest as trustee for her benefit.  The
most that can properly be claimed upon the testimony
is that he received these proceeds as her agent to invest

for her and in her name.   There was no express trust, but a fiduciary relation between them was unquestionably created.   He was bound to account to her for her property; and if the defendants, knowing of the relation, aided him in diverting her property from the purposes for which he held it, they would be accountable for it, if it could be traced to their possession.

There being no reply to the defendants' answer, the allegation therein that the transactions between the defendants and Morris were actual purchases and sales must be taken to be true.   The transactions were therefore lawful ones for the defendants to be concerned in. *Hatch* v. *Douglas*, 48 Conn. 116, 128; *Skiff* v. *Stoddard*, 63 Conn. 198, 211, 26 Atl. 874, 28 id. 104.   Although lawful, it has been held that it is improper for a trustee to engage in speculations on a margin with his trust funds, or to pledge trust property as security in such speculations.   In the absence of authority from the plaintiff to use her money in speculations of this character, Morris, as her agent, improperly so used it.   This was not "to invest" the money, in the sense in which that term is ordinarily used.   If the defendants had knowledge or are chargeable with knowledge that the money deposited by him was hers and was entrusted to him simply to invest so that it should produce an income, they were not justified in assisting him to speculate with the money.   But there is no evidence that they had actual knowledge of these facts, and the facts which are established by the evidence are not such as to impute to them such knowledge.   Where a known trustee uses trust property for his own purposes, as was the case in *Leake* v. *Watson*, 58 Conn. 332, 20 Atl. 343, and *Shaw* v. *Spencer*, 100 Mass. 382, bankers and others, who, knowing the facts, aid such trustee in the improper use of the trust property, are accountable to the *cestui que trust* for the trust property received by

them. And where securities bear upon them full evidence that they belong to the trust estate, that fact is sufficient to put a third party, who receives the trust property as security for the trustee's individual debt, upon inquiry, and to charge him with knowledge of the facts of which such inquiry would have informed him. But where a principal places in the hands of an agent cash or negotiable paper, which bear no earmarks of ownership by another than the holder, if the agent diverts it from the purposes for which he received it, as by paying his own debts with it to one who takes it without knowledge of the diversion, the latter's title to it is good, and he cannot be called to account by the principal. 2 Clark & Sykes on Agency, p. 1181, § 546; *Lime Rock Bank* v. *Plimpton*, 34 Mass. (17 Pick.) 159, 161. This is an exception to the rule that one can acquire no better right to property than the person had from whom he receives it. In the present case Morris received from the plaintiff checks made negotiable by her indorsement, and he at once converted the same by depositing them to his own account with the trust company. The cash received by the defendants, which they applied to the payments for shares of stock purchased by them in the transactions with Morris, was paid to them by the individual checks of Morris drawn against this account. They clearly would have been justified in believing that it was his own property and in carrying through the transactions in question, had he not told them to open the account in his name as trustee. But it is not an unusual thing for a depositor to open an account with his banker or broker in his own name as trustee or agent, or as a special account, where the money deposited is his own and is not in fact held in trust. This may be done to keep this account distinct from others which he has, or contemplates having, with the same bank or broker, when it is desired

Titcomb *v.* Richter.

to devote it to special uses or to cover it from attachment. The persons receiving such a deposit are not put upon inquiry to learn what the purpose of the party depositing is, or whence he received the money, or whether he is in fact a trustee or agent, and, if so, the character and purpose of the trust or agency. They are bound to hold it as a distinct deposit subject to the checks or orders of the person who deposits it, drawn in his name with the descriptive title or addition assumed by him in opening the account. Morse on Banks & Banking (2d Ed.) 293; *Central Nat. Bank* v. *Connecticut Mut. Life Ins. Co.*, 104 U. S. 54, 64; *Union Stock Yard Bank* v. *Gillespie*, 137 U. S. 411, 416, 11 Sup. Ct. Rep. 118. An account which shows that the entire amount deposited has been paid out upon such checks or orders is a full accounting. We think that the fact that Morris opened the account in his name as trustee did not put the defendants upon inquiry as to the real ownership of the money deposited or whether it was in fact trust property. To so hold would require greater vigilance on the part of the defendants to protect the plaintiff's interests than she observed herself in intrusting it to Morris.

The nonsuit was properly granted and the motion to set it aside properly overruled.

There is no error.

In this opinion the other judges concurred.