(No. 4806.   May 24, 1928.)

SOPHIA BARBARA MARGARETHA WITTHOFT, as Administratrix of the Estate of HENRY A. WITTHOFT, Deceased, Respondent, v. COMMERCIAL DEVELOPMENT AND INVESTMENT COMPANY, a Corporation, THEODORE H. GATHE, Sr., MARTHA GATHE, CITIZENS' BANK & TRUST COMPANY, a Corporation, Formerly CITIZENS' BANK, LTD., AGNES MYRTS, RICHARD WITTHOFT, MARIE WALDHEIM, SEBASTIAN FRAUGOTT WITTHOFT and ELIZABETH WITTHOFT, Appellants.

[268 Pac. 31.]

314

Peterson, Baum & Clark, for Appellants.

McDougall & McDougall, Jones, Pomeroy & Jones and C. O. Benting, for Respondent.

T. BAILEY LEE, J.—This is a suit brought by plaintiff and respondent, administratrix of the estate of Henry A. Witthoft, deceased, to cancel 125 shares of the capital stock of the defendant, Commercial Development and Investment Company, issued to defendant, Theodore H. Gathe, Sr., and others, and to require said company to issue in lieu thereof 125 shares to said administratrix.

It appears that Witthoft and Gathe, having for years been equal partners, incorporated the Commercial Development and Investment Company for the purpose of taking over the partnership assets. After the company had acquired said assets its entire capital stock of 250 shares was divided and issued as follows: On September 15, 1915, to Witthoft certificate No. O, 125 shares, to Gathe certificate No. O½, 124 shares, and on September 16, 1915, to Mrs. Gathe certificate No. 1, 1 share. Subsequently and on

the last day mentioned Witthoft surrendered his certificate for cancelation, and had issued in lieu thereof certificates 6 to 13, inclusive, 6 to 12 being issued in the names of relatives, and 13, for 25 shares, being in blank. At the same time Gathe similarly surrendered his certificate, and among those issued in lieu thereof was certificate No. 5, for 25 shares, in blank. It was agreed between the erstwhile partners that the survivor should be entitled to both such blank certificates and that, upon the death of either, the other should write his own name therein.

The evidence seems to show that at this time Witthoft handed Gathe certificates 6 to 13, inclusive, telling him that he was to have and fill in 13, if he survived the former, and stating with reference to the remaining certificates: "I want you to be my trustee, and in case of death, deliver these to the parties they are made out to."

Gathe then handed back to Witthoft the certificates mentioned together with the aforesaid certificate No. 5 in blank, which was to be filled in by Witthoft, should Gathe predecease him. All these certificates were then by Witthoft inserted in an envelope and placed in the company safe, to which at all times both he and Gathe had common access. In early November, 1915, in pursuance of an alleged personal settlement with Witthoft, Gathe withdrew certificates 5 and 13, wrote his name therein and has since continuously retained possession of them. The other certificates remained in the safe until March 17, 1917, when, according to Gathe, he placed them in defendant, Citizens' Bank & Trust Company, "for safekeeping." Witthoft died March 21, 1917, leaving a will executed June 5, 1915. His widow brought this suit October 23, 1917, charging that the agreement and transactions of September 16, 1915, were null and void for the reason that the deceased was at that time of unsound mind, wholly incapable of dispatching business, and under the dominant influence and control of defendant Gathe. Defendants answered, denying all material allegations, alleging that certificates 6 to 12, inclusive, were regularly issued as gifts to the parties named therein, that the

same were being rightfully held as collateral by defendant, Citizens' Bank & Trust Company, and the defendant Gathe affirmatively setting up his alleged right to certificate 13 under the survivorship agreement.

On December 5, 1917, Gathe filed his petition to probate the Witthoft will, alleging therein that the deceased had left an estate consisting of 100 shares of the Commercial Development and Investment Company stock, and that he was a devisee of four-sixteenths thereof. Protest was filed by the present plaintiff, as widow and heir, charging that Witthoft at the time of executing the will was of unsound mind and "acting under duress, menace, fraud and undue influence exercised upon him" by defendant Gathe. From the judgment of the probate court rejecting the will Gathe appealed to the district court, where the jury found that Witthoft at the time he executed the will was of unsound mind, and acting under undue influence. Judgment was accordingly entered rejecting the will, which judgment was subsequently affirmed on appeal to this court.

Thereafter plaintiff filed an amended and supplemental complaint, pleading as *res adjudicata* and election of remedies the former proceedings and judgment in the will contest. Defendant filed an amended answer denying all material allegations, elaborating the previous affirmative defenses, and in paragraph 7 thereof alleging:

"That at the time of dividing the stock, it was agreed by the said Witthoft and said Gathe that 50 shares of the capital stock of said corporation should issue in blank, and be represented by two certificates for 25 shares each; that upon the death of either Witthoft or Gathe, the survivor should be entitled to the 50 shares of stock, which 50 shares were thereupon regularly and duly issued in blank as aforesaid."

Later, a further amendment was had by the insertion of paragraph 7a, whereby among other things defendant Gathe alleged that at the time of the division of the stock, and after cancelation of the original 125 and 124 share certificates which defendant alleged had never been accepted by

either Witthoft or Gathe, it was agreed that 25 shares of the capital stock should issue to Gathe; that such shares were thereupon delivered to Gathe; that from that time forward Witthoft ceased to exercise any dominion or control over them, and that the same were intended as a gift to said Gathe. It was further alleged that the stock evidenced by certificates 6 to 12 was intended as gifts by Witthoft to his relatives, in fear of impending death; that such certificates were by him delivered to Gathe and by the latter retained during Witthoft's lifetime.

The cause was tried without a jury and upon the issues the court found that the executory survivorship agreement covering certificates 5 and 13 was duly entered into between Witthoft and Gathe; that Witthoft was of sound mind at the time; that said certificates together with certificates 6 to 12 were by Witthoft placed in an envelope and deposited in the company safe to which Witthoft at all times had access; that thereafter Gathe, during Witthoft's lifetime and without his knowledge or consent or any consideration, took said certificates 5 and 13 from the safe, wrote his own name therein and ever since has retained them in his possession; that said certificates were not to be delivered until the death of either Witthoft or Gathe, and that upon such event the survivor should receive both certificates; that Witthoft never at any time delivered certificates 6 to 13, inclusive, to the parties named therein or to anyone for them, and never ceased to hold dominion and control over them. The court further found that Witthoft did not make out or sign said certificates under fear or apprehension of impending death; that he did not intend to make present gifts of said shares; but that it was his intention that the persons named therein should not receive them or any interest in the corporation until after his death; that after the death of Witthoft, Gathe deposited certificates 6 to 12 with defendant, Citizens' Bank & Trust Company, as collateral security for a loan obtained for the benefit of Witthoft's estate. Other findings were made establishing the facts of the will contest. From the facts

so found, the court concluded that Henry A. Witthoft did not in his lifetime make any gift *causa mortis* or *inter vivos* of stock certificates 6 to 13, inclusive, or either of them to the parties mentioned therein or to any or either of them; that the transactions covering such certificates were attempted testamentary dispositions of personal property and unrecognizable by law, and that the proceedings and judgment in the will contest did not operate as either *res adjudicata* or estoppel through an election of remedies. From the consequent judgment in plaintiff's favor all defendants, except the Citizens' Bank & Trust Company, have appealed. Plaintiff also appealed from that part of the judgment wherein the court failed to adjudge and decree that Witthoft was of unsound mind and under the undue influence of defendant Gathe on September 16, 1915, and that the institution and adjudication of the will contest was a former adjudication of the issues and an election of remedies in this action. Defendants specify as errors practically all the court's findings and conclusions. With respect to certificate 13, defendant Gathe presents two propositions: (a) The certificate was delivered by Witthoft to defendant at the time it was executed with the enjoyment of its benefits postponed until the death of Witthoft, the transaction being an executed contract speaking as of the date of its execution; (b) That, if the contract was executory only, because of lack of delivery, it has been carried out by the death of Witthoft and the reduction of the certificate to defendant's absolute possession. To sustain the first proposition, defendant insists that complete delivery was made when he and Witthoft exchanged the respective blank certificates 5 and 13 under the survivorship agreement, and that, if such exchange did not constitute delivery, then delivery was effected later in November, when, as defendant claimed, Witthoft told him to take certificate 13 in a personal settlement. A partial reply hereto is furnished by defendant's brief wherein, quoting the court's finding No. 11 in full, he says:

"A glance at the record will show that all of the evidence supports this finding."

This finding was:

"The Court finds that at the time of signing the said stock as aforesaid, it was agreed between the said Henry A. Witthoft and Theodore H. Gathe, Sr., that the two certificates issued in blank, to-wit: Nos. 13 and 5, respectively, were not to be delivered until the death of one of them, said Henry A. Witthoft or Theodore H. Gathe, Sr., and that upon the death of either one of said parties the survivor thereof should receive the two stock certificates so issued in blank, to-wit: Nos. 13 and 5, and at the same time and after the making out of said stock certificates, as aforesaid, the said Henry A. Witthoft took into his possession all of the certificates Nos. 6 to 13 inclusive and placed the same in an envelope and put the same into a safe in the office of the Commercial Development & Investment Company to which safe the said Henry A. Witthoft had full and complete access and control at all times."

As to the personal settlement of November, 1915, whereby defendant claimed he became the owner of certificate 13, the court found that there had been no such settlement. This finding is attacked by defendant as being wholly unsupported and contrary to the uncontradicted evidence of defendant in relation thereto. When the court made the finding, it had before it the sworn pleadings of defendant made long after the date of the alleged settlement. No mention of defendant's right to the certificate by virtue of any settlement appeared therein. On the contrary, defendant had plead in one paragraph the survivorship agreement covering blank certificates, 5 and 13, and in another declared that certificate 13 had been issued and delivered him by Witthoft direct as a gift, which gift he had ever since retained. The court also had before it defendant's letter of May 23, 1917, to attorney Benting, wherein he stated that he had become the owner of the stock September 16, 1915, peculiarly omitting any reference to the alleged transfer of it to him in the settlement of November,

1915, over eighteen months before. We cannot say the court was not justified in the finding it made.

But conceding that such a settlement was actually had, then, the delivery of the certificate was obviously made in pursuance of such settlement, and with no thought of the original agreement except utterly to abrogate it between the parties. There would have remained absolutely nothing to support it, and give Witthoft a right to possess certificate No. 5, in case of defendant's decease. This no doubt defendant realized, for he testified that Witthoft at the time told him to take No. 5 also. If we were to take defendant's testimony as true, the survivorship agreement was totally wiped out by the November settlement; and the defendant is in court asserting a right not founded upon such agreement either executed or executory, but upon a transaction never plead and in direct conflict with the foundations of his right as plead. As to the second proposition, we readily agree that Witthoft's death coupled with a subsequent reduction of certificate 13 to defendant's possession in pursuance of the survivorship agreement would have invested defendant with absolute title. But Gathe's possession of the certificate was not acquired under any provision of the contract. In direct violation of their mutual agreement Gathe abstracted from the safe Witthoft's property as well as his own, completely appropriating Witthoft's certificate and rendering the contract impossible of enforcement against his estate had Witthoft outlived him. There is no force in the argument that Witthoft might have had recourse against Gathe's estate. It is possible, but highly improbable, that his unsupported testimony would have convinced a jury that certificate 13, on its face regularly issued to the deceased and found among his effects, was in fact stolen property. And he never could have recovered certificate No. 5, to testify concerning his right to which his mouth would have been closed by statute. Gathe had done everything in his power to secure for himself or his estate the entire fruits of the contract and deprive Witthoft of any enjoyment thereof. He

cannot now come in, brushing the feathers from his mouth, and ask the court to enforce in his favor an agreement he has outraged and trampled underfoot. The maxim, "He who comes into equity must come with clean hands," imposes itself alike upon him who defends and upon him who prosecutes a suit in equity.

Coming now to certificates 6 to 12, inclusive, which are claimed to have been issued to Witthoft's relatives as gifts, it is clear from the record that there was never any delivery of them to the parties named therein nor to any person for them. And it is equally clear that Witthoft never intended that his dominion over them should cease until his death. Prior to his death neither he nor Gathe ever mentioned the certificates to the alleged donees. Witthoft continued to act as secretary, director and stockholder at company meetings; he was present and voting at the directors' meeting of May 1, 1916, where it was by motion provided that any money advanced to any stockholder be secured "by the said stockholder with the number of shares of his holding." He stated at the meeting of August 7th following that he purposed taking a trip, that the necessary money was not on hand and that he purposed "to make arrangements with the Citizens Bank & Trust Company, so that it could be paid later from the earnings of the stock." At the subsequent meeting of September 4th it was carried, on motion of defendant Gathe, "that on account of the stock that has been assigned to the respective familys of T. H. Gathe and H. A. Witthoft, in case death should overtake either that such stock so assigned should be placed in escrow or be delivered personally by the surviving member of the Company and such delivery should date one day prior to such a death of either of the above named members."

And after Witthoft's death, defendant Gathe deposited this stock with defendant, Citizens' Bank & Trust Co., as collateral security for a loan for the benefit of Witthoft's estate. The mere transfer of the stock upon the company's books could not effect delivery. (C. S., sec. 4730; *Haynes*

*v. Brown,* 18 Okl. 389, 89 Pac. 1124, construing a statute identical with ours.) Speaking of Witthoft's instructions to him concerning these certificates, Gathe testified that the former said:

"I want you to be my trustee, and in case of my death, deliver these to the parties they are made out to."

This language excludes any possibility of Gathe's acting as trustee for the alleged donees. At most, he was Witthoft's agent to deliver, and the agency was terminated by Witthoft's death. This court in *Lewis County v. State Bank,* 31 Ida. 244, 170 Pac. 98, said that to constitute a gift of personal property, "there must be an actual and complete delivery of the property made in execution of the gift and for the express purpose of consummating it."

The rule is succinctly stated in 28 C. J. 648, par. 43:

"A gift of property to take effect after the donor's death, the donor in the meanwhile retaining the control and dominion of the property, cannot be sustained."

In *Allen-West Com. Co. v. Grumbles,* 129 Fed. 287, it was declared:

"Among other indispensable conditions of a valid gift are the intention of the donor to absolutely and irrevocably divest himself of the title, dominion and control of the subject of the gift *in praesenti* at the very time he undertakes to make the gift. . . . . "

The court said in *Noble v. Garden,* 146 Cal. 225, 79 Pac. 883:

"If title remained in deceased, the transaction shows only an intention to make a gift. By the terms, understanding and intention of deceased the gift was not to take effect until her death. In such case the disposition is testamentary and not a gift."

The trial court did not err in holding that certificates 6 to 12 were ineffectual as gifts.

We see no merit in respondent's appeal. The fact that deceased had been adjudged to be of unsound mind on June 5, 1915, furnished nothing more than a presumption that his condition was the same on September

15th following. That presumption was overcome by evidence satisfactory to the trial court, much of which evidence was conflicting. There was no identity of issues in the will contest and the present suit, no place for *res adjudicata*. Nor has there been any election of remedies. Defendants are seeking no affirmative relief nor are they relying upon any issue that was or could have been determined in the will contest.

Judgment affirmed. Costs, on main appeal, to respondent; on cross-appeal, to appellants.

Budge and Taylor, JJ., concur.

WM. E. LEE, C. J., and GIVENS, J., Concurring in Part and Dissenting in Part.—As to stock certificate No. 13 and the disposition of the stock represented by it, we dissent. Otherwise we concur.

Petition for rehearing denied.