T. A. JOHNSTON, TRUSTEE, VICTORY LEASE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84693.   Promulgated November 22, 1938.

*Samuel A. King*, Esq., for the petitioner.
*James H. Yeatman*, Esq., and *M. L. R. Wade*, Esq., for the respondent.

1200

1202

1204

OPINION.

TYSON: The assignment of the Victory lease, executed by Abernathy and Kirkpatrick on December 1, 1931, constituted a conveyance of legal title to an interest in real property to T. A. Johnston, trustee. See *C. A. Everts et al., Jamison Lease Syndicate*, 38 B. T. A. 1039, and the authorities cited therein. The uncontradicted facts herein establish that, under the terms of a prior agreement of Johnston and Owen, Johnston, as trustee, acquired and held the title to the Victory lease during the taxable year on behalf of himself as to a one-half undivided interest therein and on behalf of John Owen as to a one-half undivided interest therein and that one-half of the oil payments reserved by the assignors of the lease would be taken out of the respective interests of Johnston and Owen in the lease.

Johnston and Owen, as the individual owners of a 7/8 interest in the Victory lease, offered to sell for cash undivided fractional interests in that lease and the well to be drilled thereon and each purchaser understood that, under an assignment, he or she would become the

owner of an undivided fractional interest in real property. The assignments, duly executed, acknowledged, and delivered by T. A. Johnston, trustee, as assignor, whereby he did "bargain, sell, transfer, assign and convey all rights, title and interest of the original lessee and present owner" in and to an undivided fractional interest in the Victory lease to each purchaser, his heirs, and assigns, constituted a valid conveyance of title to an interest in real property to each of such purchasers; and this is true as between the parties despite the lack of recordation of the assignment or conveyance. See *C. A. Everts et al., Jamison Lease Syndicate, supra.*

At the time each purchaser became the owner of an undivided fractional interest in the Victory lease, he or she had an oral understanding that neither Johnston nor Owen would have any authority to sell or encumber his or her fractional interest; that Johnston and Owen would direct and manage the development and operation of the Victory lease and the sale of oil and gas produced therefrom; that he or she, as such owner, would be personally liable for his or her proportionate share of the operating expenses; that if such owner did not record his or her assignment, Johnston and Owen would collect his or her share of the gross proceeds from oil and gas sales, deduct his or her proportion of the operating expenses, and distribute his or her pro rata share of the net proceeds; and, further, that such owner of a fractional interest could, at any time, record his or her assignment and thereupon, as an owner having title of record, he or she could sign a division order and collect direct from the pipe line company his or her pro rata share of the gross proceeds. The terms of that oral understanding were carried out and, since in the instant case none of the 27 purchasers and owners of fractional interests recorded the assignments of such interests, Johnston and Owen collected the gross proceeds from the sales of oil and gas on behalf of themselves and such owners, deducted the operating expenses, disbursed to the owners their respective shares of the net proceeds, maintained books of account, and rendered an accounting to each owner. Since title of record stood in the name of "T. A. Johnston, Trustee," up to and including 1933, all of the transactions of Johnston and Owen in regard to the Victory lease were carried out in the name of "T. A. Johnston, Trustee." The coowners of fractional interests in the Victory lease, as a group, had no form of organization empowered to direct, control, or participate in the development or management of that lease and they never held any meetings, nor were any certificates or evidence of interest other than the above mentioned assignments ever issued to them.

The sole question presented is whether, upon the facts herein, petitioner was, during 1933, an "association" within the meaning of

that word as used in section 1111 (a) (2) of the Revenue Act of 1932, and thus made subject to tax as a corporation.

In the recent case of *C. A. Everts et al., Jamison Lease Syndicate, supra,* and upon facts which in many respects were quite similar to those in the instant case, a similar issue was presented. The numerous authorities cited, considered, and quoted from in that opinion are equally applicable here, and we do not deem it neces sary to again enter into a lengthy discussion of such authorities. In that case, Everts, as the individual owner of a one-half interest in a Texas oil and gas lease, sold fractional interests therein, and we held that under the assignments of such interests the purchasers acquired title to an interest in real property and became tenants in common of fractional undivided interests in the oil and gas lease. On behalf of himself, as the owner of unsold fractional interests, and on behalf of the other coowners, under powers of attorney given him, Everts directed, controlled and managed the development and production operations, the sale of oil and gas produced, the collection of the gross proceeds, the payment of operating costs, and the distribution of the net proceeds, and rendered an accounting to the coowners, and we concluded that there existed merely the relation of principal and agent as between each tenant in common and Everts. We held therein that there was no aggregation of individuals or separate entity having the attributes of a corporation and that the owners of the fractional interests in the lease there involved were tenants in common in their relations with each other and did not constitute an association taxable as a corporation.

In the instant case, as in the *Everts* case, the assignments constituted conveyances of legal and equitable title to fractional interests in the Victory lease and the assignees became tenants in common of undivided interests in that lease. In that case, Evarts remained the individual owner of the unsold fractional interests in the lease there involved, and in the instant case, Johnston and Owen remained the individual beneficial owners of the unsold fractional interests in the Victory lease, although the record title was in T. A. Johnston, trustee. Up to and including 1933, the only fractional interests as to which legal title was held by T. A. Johnston, as trustee, were those interests beneficially owned by Johnston and Owen, and in 1934 their respective interests were assigned to them individually in conformity with their prior agreement that the lease should be paid for and owned by them individually, half and half. In the *Everts* case, Everts carried out all of the transactions as to development, operation, sale of oil and gas produced, and distribution of the net proceeds on behalf of himself and the other coowners of the lease there involved, and in the instant case Johnston and Owen carried out such

transactions in a similar manner as to the lease here involved. In that case, as here, there was no limitation upon the personal liability as tenants in common of the various coowners of the lease. In that case, as here, there was no meeting of the interest holders. In that case, Everts acted as an agent under a written power of attorney from each coowner which expressly delegated Everts' powers and he carried out his various transactions in his individual name or in the name of the Everts Drilling Co., a sole proprietorship. In the instant case, up to and including 1933, Johnston and Owen carried out expressly delegated powers under an oral understanding with each coowner, but since title of record to the lease remained in the name of "T. A. Johnston, Trustee," all of their transactions as to the Victory lease were carried out in that name. The bank account in which receipts from the operation of the lease were deposited was in that name and the disbursements to the coowners of fractional interests for their distributive shares were made by checks signed "T. A. Johnston, Trustee," drawn on that account.

These latter facts are the only distinguishing ones as between the *Everts* case and the instant case. However, we do not regard such distinction as justifying an ultimate conclusion different from that reached in the *Everts* case. While Johnston and Owen acted in the name of "T. A. Johnston, Trustee" in exercising certain delegated powers in the operation of the lease on behalf of the coowners thereof and with the consent and agreement of such coowners, that fact is not determinative of the real status of Johnston or Johnston and Owen in their business relations with the coowners in such operation. The use of the word "trustee" appended to Johnston's name can not be held to have the effect of actually making him, or Johnston and Owen, trustee or trustees. What Johnston and Owen and the coowners of interests in the lease characterized the capacity in which Johnston or Johnston and Owen acted is not controlling. That capacity and the relations between the parties are controlled by the terms of the agreement creating them. Cf. *Titcomb* v. *Richter*, 93 Atl. 526; 89 Conn. 226; *Witthoft* v. *Commercial Development & Investment Co.*, 268 Pac. 31–35; 46 Idaho, 313; *Nowell* v. *Oswald*, 274 Pac. 423 (Dist. Ct. of Apps. Cal.); 96 Calif. App. Rep. 536 (rehearing denied; hearing denied by Supreme Court). *McLean* v. *Ficke*, 62 N. W. 753; 94 Iowa, 283; *Rowe* v. *Rand*, 12 N. E. 377; 111 Ind. 206. *Trudie T. Munger*, 16 B. T. A. 168, and authorities cited therein. The relation between Johnston and Owen and the coowners of the lease herein, under the terms of the agreement between them, was that of principal and agent and not that of trustees.

While Johnston and Owen acted under the name of "T. A. Johnston, Trustee," in performing their delegated authority in carrying

out the actual operation of the lease on behalf of each coowner no trust, as a concrete entity, separate and apart from the individual interest holders, was created, for each coowner remained the individual owner of his or her interest as tenant in common of real property and could have, at any time, recorded his or her assignment, signed a division order, and received his or her pro rata share of the gross proceeds direct from the pipe line company. In *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369, the Supreme Court said that the five individual owners of realty who there formed a combination to conduct their joint business enterprise and to avoid partition of their undivided interests in the realty, *had been coowners of realty*, but they preferred to become associates under their indenture of trust, and through a trust entity they secured centralized management, continuity, limited liability, and shares of beneficial interest constituting personal property, and that, thus, they had created an "association" taxable as a corporation. Here, the coowners of undivided interests in the Victory lease have continued, throughout the taxable year, to be the individual coowners of interests in real property and as such entitled to receive their respective pro rata shares of proceeds from the production of oil and gas therefrom. Here, we do not find an aggregation of individuals or an entity having attributes analogous to those of a corporation.

Upon the facts herein, we conclude that there did not exist, during 1933, an "association" taxable as a corporation within the meaning of the applicable statute. *C. A. Everts et al., Jamison Lease Syndicate, supra*, and the authorities cited therein.

*Decision will be entered for the petitioner.*