ELIZABETH VAN AUKEN *v.* JULIA TYRRELL ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 1—decided July 13, 1943.

*Leo Nevas,* with whom, on the brief, was *Rocco R. P. Perna,* for the appellant (plaintiff).

*Sheldon B. Smith,* for the appellees (defendants).

BROWN, J. The plaintiff alleged in her complaint as amended that she advanced $7521.57 to the defendants and they received it in trust for the purchase of a lot "for and in the plaintiff's name" and the construction of a house thereon to be her permanent home; that the defendants obtained the advances by falsely and fraudulently representing that they would use the money to buy this lot and to erect and equip a home for the plaintiff thereon which should be her exclusive property; that instead, the defendants, expending it "for their own benefit and for their own purposes," bought the lot in Norwalk, wrongfully taking title in the name of the defendant Julia, and built, furnished and equipped a house thereon, and, notwithstanding plaintiff's demands, have refused to convey the property to her; and that by virtue of a trust the plaintiff is equitable owner of the property, which remains in the possession of the defendants. The plaintiff sought a conveyance of the title, an accounting and damages. By their substituted answer the defendants in substance pleaded a general denial, and, as a special defense, that of the $7101.57 which they admitted was given by the plaintiff to the defendant Julia all with the exception of a $200 outright gift was received under an oral agreement whereby the latter was to furnish the plaintiff and her son a home and support, with the exception of clothes, so long as they lived. The plaintiff's reply was a denial of the allegations of the special defense.

Certain pertinent facts found by the court which are not subject to correction may be thus summarized: The plaintiff is a widow seventy-four years of age who had several thousand dollars in the bank. A crippled son Walter and the defendant Julia are two of her five

children. Prior to 1935 the plaintiff had been living alone in Greenwich, and intermittently from 1923 to 1933 Walter lived with Julia and her husband, the defendants, in their home in Norwalk, practically all of the time without charge for board or room. Julia and the plaintiff frequently visited each other, and in August, 1935, when the construction of the house below referred to was undertaken, the plaintiff took up her abode with the defendants, who furnished her board and room gratis. In March, 1936, they, together with Walter, took up their residence in the new house, where all lived together in apparent harmony for about a year. Friction then developed without fault upon the defendants' part, and on March 24, 1937, the plaintiff instituted this action. Until about three weeks before the trial on June 13, 1940, when they voluntarily left, the plaintiff and Walter continued to live in the house. During the last six months there the plaintiff voluntarily purchased and prepared some food for herself and Walter, notwithstanding the defendants then were and ever since have been willing and able to continue to furnish it to them gratuitously during their lifetime.

The gist of the plaintiff's complaint is that by falsely representing that they would use the money to procure a house and lot in her name for her, the defendants obtained the funds from her, but instead used them to acquire the property in the defendant Julia's name for their own benefit, and have refused to convey it to the plaintiff. These essential allegations set forth a cause of action for the breach of a constructive trust arising from the defendants' fraudulent and wrongful conduct detailed therein. A constructive trust arises "when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably

entitled, and when the property thus obtained is held in hostility to his beneficial rights of ownership. . . . all instances of constructive trusts properly so called may be referred to what equity denominates fraud, either actual or constructive, as an essential element, and as their final source." 3 Pomeroy, Eq. Jur. (4th Ed.), p. 2370. "A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form. If one person having money or any kind of property belonging to another in his hands wrongfully uses it for the purchase of lands, taking the title in his own name; . . . equity impresses a constructive trust upon the new form or species of property, . . . and the court will enforce the constructive trust for the benefit of the beneficial owner or original *cestui que trust* who has thus been defrauded." 3 Pomeroy, op. cit., p. 2397; *Millard* v. *Green*, 94 Conn. 597, 601, 602, 110 Atl. 177.

To recover upon the cause of action so alleged, the burden rested upon the plaintiff to prove these essential allegations. The court not only refused to find these proven but expressly found that the plaintiff was not wrongfully or fraudulently induced by the defendants or either of them to act as she did in the transaction, and, further, that in May, 1932, the plaintiff advanced money to the defendant Julia which she used to acquire title to the lot in her own name under express instructions from the plaintiff to do so; that some three years later the plaintiff requested Julia to arrange for building a house on it; that the defendants proceeded to do this; that the plaintiff from time to time advanced the money to build and equip it; and that the defendants expended for the lot and house substantially in excess of the $7101.57 so provided by the plaintiff. The court

concluded that this was all done pursuant to an oral "agreement" that the plaintiff was to furnish the money for a house to be built on the lot, in the name of Julia, wherein the plaintiff and Walter might make their home and be supported by the defendants as long as they lived. The plaintiff can only prevail upon this appeal if entitled to a correction of the court's finding in the particulars above recited. While the evidence is conflicting, there is not only direct testimony of the arrangement made and performance under it but evidence of the plaintiff's admissions to the same effect, and there is also sufficient evidence to support the relevant subordinate corroboratory facts found. The credibility to be accorded the several witnesses thus becomes the decisive factor. The trial court's finding makes clear that it did not believe the testimony of Walter and the plaintiff essential to her case, but did accept that of the defendants. This determination of credibility we cannot disturb, and the judgment for the defendants must stand.

A further conclusion of the court was that "the defendant Julia Tyrrell does not hold the property in question in trust for the plaintiff." This is not so, but, as is manifest from what we have already said, the conclusion was not essential to the court's judgment and does not fall within the narrow issue presented upon the pleadings. So far as appears by this record, upon the purchase in 1932 of the lot by Julia in her own name a resulting trust arose in favor of the plaintiff, who furnished the money. *Ward* v. *Ward*, 59 Conn. 188, 195, 22 Atl. 149; *Fox* v. *Shanley*, 94 Conn. 350, 357, 109 Atl. 249. When the house was built upon the lot some three years later, it became a fixture, and as such a part of the realty, and title to it merged in the land. *Ward* v. *Ives*, 91 Conn. 12, 21, 98 Atl. 337. When the agreement concerning the con-

struction of the house was made, as found by the court, the original resulting trust as to the lot was superseded and merged into this arrangement, and the rights in the lot and the house became identical. Julia, then, held legal title to the house and lot for the purpose of carrying out the agreement to afford a home and support for the plaintiff and Walter so long as they lived. This was an oral trust, and as such was within the Statute of Frauds. *Andrews* v. *New Britain National Bank*, 113 Conn. 467, 472, 155 Atl. 838; *Hanney* v. *Clark*, 124 Conn. 140, 144, 198 Atl. 577. There was, however, apparently sufficient part performance to take it out of the statute. See *Hanney* v. *Clark*, supra. The record upon this appeal does not present the question whether, on the removal of the plaintiff and Walter from the house, the oral trust terminated, so that the plaintiff was entitled to claim a reconveyance of the property, and, if so, whether the defendants would have the right to claim reimbursement for the improvements they had made to the property. The extent of our decision is that the court did not err in rendering judgment for the defendants upon pleadings and evidence in the record before us.

There is no error.

In this opinion the other judges concurred.