### Aetna Life and Casualty Company *v.* Union Trust Company
### (14903)

Borden, Berdon, Katz, Palmer and Spear, Js.

*Argued June 3—decision released August 16, 1994*

*William H. Narwold,* with whom were *Charles D. Ray* and, on the brief, *David D. Legere,* for the appellant (defendant).

*J. Paul Johnson,* with whom was *Gary R. Khachian,* for the appellee (plaintiff).

BORDEN, J. The principal issue in this appeal is whether, under the circumstances of this case, a bank is liable to a trust beneficiary for obeying the fiduciary's instruction to transfer funds out of the fiduciary's general trust account in payment of the fiduciary's personal obligation to the bank. The defendant, Union Trust Company, appeals[1] from the judgment of the trial court holding it liable to the subrogee of the trust beneficiary for participation in a breach of trust. The plaintiff, Aetna Life and Casualty Company,[2] in addition to claiming that the trial court was correct, proposes as alternative grounds for affirmance of the trial court's judgment that the defendant should be held liable on

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] Pursuant to its obligations under its fidelity bond, the plaintiff, Aetna Life and Casualty Company, made whole the conservatorship estate, the estate of Grace M. Flannigan, that was the victim of its fiduciary's delict. Thus, the plaintiff brought this action as the subrogee of the rights of the estate.

a theory of either conversion or constructive trust. We agree with the defendant's claim; we find no merit in the plaintiff's alternative grounds for affirmance; and we therefore reverse the judgment of the trial court.

The plaintiff brought this action to recover money it had paid to the estate of Grace M. Flannigan (estate) as surety for the estate's fiduciary, attorney James C. Moyer, after Moyer committed a breach of trust by utilizing trust funds to pay off his personal obligations to the defendant. The case was referred to an attorney trial referee, who heard the case pursuant to a stipulation of facts, and filed a report with the trial court. The trial court rendered judgment for the plaintiff.

The parties stipulated to the following facts. On November 13, 1987, the defendant lent $85,000 to Moyer, who on the same date executed a mortgage deed to the defendant on property in Trumbull as security for the loan. In February, 1989, the defendant discovered through an internal audit report and title rundown that the mortgage had not been recorded in the Trumbull land records. Upon subsequently discovering that the property had been sold by Moyer on December 28, 1988, Daniel Glassberg, senior vice-president and general counsel to the defendant, contacted Moyer in March, 1989, and demanded immediate repayment of the loan. According to Glassberg, Moyer stated that he would make payment in full before April 1, 1989. In addition, the defendant conducted a credit search in an unsuccessful attempt to locate assets owned by Moyer to recover the amount due.

On May 2, 1989, Moyer entered the Derby branch of the defendant and instructed the assistant branch manager, Hazel Hummel, to debit an account, specified only by number, in the amount of $93,179.24, and to apply these funds: (1) to pay off the mortgage loan balance

of $88,745.19; (2) to pay off another note of Moyer's that was due to the defendant in the amount of $2433.33; and (3) to deposit $2000 into Moyer's personal checking account. Hummel carried out Moyer's request after verifying the balance in the account and the payoff figures for the loans in question. She did not seek to determine the type of account that Moyer instructed to be debited, or whether the loans were Moyer's personal loans, although this information was available to her in the bank records. She knew, however, because of the numbered code of the account, that it was not a personal account. The transactions were carried out by the defendant's central processing department on the basis of a debit/credit memo prepared by Hummel.

The account debited, titled "James C. Moyer, Trustee," was an attorney's trust account maintained by Moyer, which had been opened by Hummel at an earlier date. Moyer was also the conservator of the estate, appointed by the Shelton Probate Court. Almost all of the funds in the account, namely, $110,285.21 out of $110,300.03, represented proceeds received by Moyer as conservator of the estate in connection with the sale of certain real property of the estate that Moyer had sold. On May 1, the day before Moyer had instructed Hummel to effectuate the transaction at issue, he had, at the defendant's Westport branch, deposited the sale proceeds check, which had been made out to "James C. Moyer, Conservator," to his attorney's trust account.

At some time between May 2 and May 19, 1989, Glassberg became concerned, based on the May 2 transaction, that Moyer might have been converting client funds. Glassberg wrote to the statewide grievance committee. Moyer was subsequently arrested and convicted of a criminal offense, and he resigned from the Connecticut bar.

The plaintiff was surety for Moyer on a bond in the amount of $130,000, filed with the Probate Court in connection with the sale of the property owned by the estate. After dismissing Moyer as conservator, the Probate Court called the bond, which the plaintiff paid in the amount demanded, namely, $123,285.21. The plaintiff sued Moyer and obtained a stipulated judgment in the amount of $123,285.21, which remains wholly unsatisfied.

The plaintiff, as subrogee of the rights of the estate, also made written demand upon the defendant for the payment of the money that had been debited from Moyer's trustee account and used to pay Moyer's personal loans from the defendant bank. The defendant disputed liability and the plaintiff commenced this action, claiming damages and the imposition of a constructive trust on the money being held by the defendant.

The matter was presented to the attorney trial referee on four theories of recovery: (1) negligence; (2) participation by the defendant in Moyer's breach of trust; (3) improper setoff; and (4) conversion. On the basis of the stipulated facts, the referee's report rejected the plaintiff's breach of trust, improper setoff and negligence claims. With regard to the conversion claim, the referee recommended that: (1) the trial court adopt, as a matter of law, a broad view of the type of property that is subject to the tort of conversion, and render judgment for the plaintiff; but (2) if, as a matter of law, the court declined to take such a broad view, the court render judgment for the defendant.

The trial court concluded that the defendant was liable because it had participated in Moyer's breach of trust. The court did not specifically consider either the conversion or constructive trust theories, now advanced on appeal by the plaintiff as alternate grounds on which

to affirm the judgment. See Practice Book § 4013.[3] Accordingly, the court rendered judgment for the plaintiff. This appeal followed.

## I

The defendant claims that the trial court improperly held it liable for participation in Moyer's breach of trust. We agree.

It is not disputed that Moyer committed a breach of trust against the estate. The principal issue in this case is whether the defendant should be held liable as a participant in that breach of trust. The defendant argues that it neither knew nor can be charged with knowledge of Moyer's misapplication of trust funds. The plaintiff concedes that, as the trial court found, no one person in the defendant's employ had actual knowledge of the misapplication of the estate's funds. Indeed, the trial court specifically found that no single individual employed by the defendant had actual knowledge that Moyer was misapplying the funds of the estate.

In *Titcomb* v. *Richter*, 89 Conn. 226, 93 A. 526 (1915), this court considered a claim by a trust beneficiary against stockbrokers for an accounting of trust funds improperly depleted by the fiduciary, Morris. The plaintiff had entrusted funds to Morris for investment, which Morris deposited in an account with the defendants in the name "Charles E. Morris, Trustee." The plaintiff sought to hold the defendants liable for Morris' diversion of her funds.

This court affirmed a judgment for the defendants. We stated that Morris "was bound to account to [the

---

[3] Practice Book § 4013 provides in relevant part: "[FILING APPEAL]——ADDITIONAL PAPERS TO BE FILED BY APPELLANT AND APPELLEE . . . .

"(1) . . . . If any appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within fourteen days from the filing of the appellant's preliminary statement of the issues."

plaintiff] for her property; and if the defendants, knowing of the [fiduciary] relation, aided him in diverting her property from the purposes for which he held it, they would be accountable for it, if it could be traced to their possession." Id., 229. In determining whether the defendants could be chargeable with such knowledge, we drew on the law applicable to banks, and held that the name under which the trust account was maintained had particular significance.

"Where a known trustee uses trust property for his own purposes . . . bankers and others, who, knowing the facts, aid such trustee in the improper use of the trust property, are accountable to the cestui que trust for the trust property received by them. And where securities bear upon them full evidence that they belong to the trust estate, that fact is sufficient to put a third party, who receives the trust property as security for the trustee's individual debt, upon inquiry, and to charge him with knowledge of the facts of which such inquiry would have informed him." Id., 229–30. We contrasted this situation, however, with a case in which the diverted property carries no indication on its face of its fiduciary status. In that instance, "if the [fiduciary] diverts it from the purposes for which he received it, as by paying his own debts with it to one who takes it without knowledge of the diversion, the latter's title to it is good, and he cannot be called to account by the principal." Id., 230.

Applying these principles to the facts of the case, we held that the fact that the account was in the name of "Charles E. Morris, Trustee," without any further specification of the nature of the trust account, was insufficient to put the defendants on inquiry. "[The defendants] clearly would have been justified in believing that [the account] was [Morris'] own property and in carrying through the transactions in question, had he not told them to open the account in his name as

trustee. But it is not an unusual thing for a depositor to open an account with his banker or broker in his own name as trustee or agent, or as a special account, where the money deposited is his own and is not in fact held in trust. This may be done to keep this account distinct from others which he has, or contemplates having, with the same bank or broker, when it is desired to devote it to special uses . . . . The persons receiving such a deposit are not put upon inquiry to learn what the purpose of the party depositing is, or whence he received the money, or whether he is in fact a trustee or agent, and, if so, the character and purpose of the trust or agency. They are bound to hold it as a distinct deposit subject to the checks or orders of the person who deposits it, drawn in his name with the descriptive title or addition assumed by him in opening the account. Morse on Banks & Banking (2d Ed.) 293; *Central Nat. Bank* v. *Connecticut Mut. Life Ins. Co.,* 104 U.S. 54, 64 [26 L. Ed. 693 (1881)]; *Union Stock Yard Bank* v. *Gillespie,* 137 U.S. 411, 416 [11 S. Ct. 118, 34 L. Ed. 724 (1890)]." *Titcomb* v. *Richter,* supra, 89 Conn. 230–31.

In the present case, the funds received by Moyer on behalf of the trust beneficiary were deposited in an account in the name "James C. Moyer, Trustee." The account was Moyer's attorney trust account and bore no indication that the funds therein were the property of a particular trust beneficiary. Thus, the defendant was not put on inquiry with respect to the transaction at issue.

Although we recognize that much has changed in the banking world since 1915, it is still "not an unusual thing for a depositor to open an account with his banker or broker in his own name as trustee or agent, or as a special account, where the money deposited is his own and is not in fact held in trust." Id., 230. "We think that the fact that [Moyer] opened the account in his

name as trustee did not put the [defendant] upon inquiry as to the real ownership of the money deposited or whether it was in fact trust property. To so hold would require greater vigilance on the part of the [defendant] to protect the plaintiff's interests than [was observed] in intrusting [Moyer with the funds]." Id., 231.

We have not been asked to overrule *Titcomb* v. *Richter,* supra, 89 Conn. 226, and because the facts of this case indicate that the considerations underlying *Titcomb* continue to be relevant, we decline to do so under these circumstances. Because we adhere to the view that the defendant in this case was not on inquiry as to the nature of the funds in Moyer's general trust account, it is unnecessary to determine whether, under other circumstances, a bank would be held to the collective knowledge of all of its employees and records regarding a particular transaction, as the defendant suggested at oral argument. Even if the defendant in this case were to be held to the knowledge that the funds were taken from a trust account, in this case it would have been under no duty of inquiry as to the nature and ownership of the funds because the account was only in the name of "James C. Moyer, Trustee."[4]

---

[4] We do not imply that it is ethically permissible for an attorney to commingle personal and clients' funds. See Rules of Professional Conduct § 1.15 (a). The fact that, in this case, Moyer may have violated rule 1.15 (a), however, would not advance the plaintiff's cause. First, an ethical violation by an attorney does not necessarily impose liability on the attorney's banker. Second, although the parties stipulated that Hummel had opened Moyer's trustee account, there is no stipulation regarding when that was done or that she knew, on May 2, 1989, that the account that Moyer ordered to be debited was the account that she had opened for him previously. Moreover, there is no stipulation, and the trial court did not find, that Hummel knew (1) that the account debited was an attorney's trust account containing clients' funds, or (2) that such an attorney's account ought not to contain the attorney's own personal funds beyond the time necessary for an accounting and severance of the respective interests of the attorney and client. See Rules of Professional Conduct § 1.15 (c). Thus, under the facts of this case, from the defendant's point of view, this was a trustee account similar to that described in *Titcomb* v. *Richter,* supra, 89 Conn. 226.

For the same reasons, we reject the plaintiff's claim that Hummel was on inquiry notice because she had previously opened Moyer's account and knew, when she debited the account, that it was not a personal account. Furthermore, despite the defendant's concession that if Moyer had written a check to pay off his loan the defendant might be liable, we reject a distinction between a check and an electronic transfer evidenced by a debit/credit memo under the facts of this case. Even if Moyer had written a check indicating on its face the name of the account as "James C. Moyer, Trustee," the defendant would not have been on notice under *Titcomb* that the funds were held in trust for the estate.[5]

The plaintiff contends, nonetheless, that regardless of the lack of actual knowledge of Moyer's misconduct by any single employee of the defendant, the benefit to the defendant resulting from the misapplication of trust funds is sufficient to charge the defendant with knowledge and hold it liable for a breach of trust. We disagree. In a case where the trust account involved is a general trust account and the bank has no duty of inquiry as to the nature and ownership of funds therein, we see no persuasive reason to hold the bank to knowledge of the source of the funds simply because it derives benefit from the transaction involving the funds.

We recognize the line of cases in some states that generally hold a bank to the knowledge of a breach of trust if funds are transferred by a trustee from a trust account in order to pay the personal debt of the trustee

---

[5] We note that General Statutes § 42a-3-307, which became effective on October 1, 1991, states rules of law that, under the Uniform Commercial Code, could have affected this case. The trial court did not consider, and the parties have not briefed or argued, however, either this section or the predecessor parts of the Code that § 42a-3-307 was intended to clarify. General Statutes Ann. § 42a-3-307, Uniform Commercial Code, comment 1 (West Cum. Sup. 1994). Accordingly, we decide this case on the basis on which it was tried and decided in the trial court, and briefed and argued in this court. *Pineman* v. *Oechslin,* 195 Conn. 405, 417, 488 A.2d 803 (1985).

to the bank, even though the bank would not be liable for such a payment to a third party due to lack of knowledge. See 4 A. Scott & W. Fratcher, Trusts (4th Ed. 1989) § 324.4. In those cases, however, the accounts were specifically designated as held in trust for the trust beneficiary or bore some other indication on their face that the funds belonged to another. See, e.g., *Bank of Giles County* v. *Fidelity & Deposit Co.,* 84 F.2d 321 (4th Cir. 1936) (W.W. Walker as Treasurer of the County); *Conqueror Trust Co.* v. *Fidelity & Deposit Co.,* 63 F.2d 833 (8th Cir. 1933) ("C. A. Stone, local agent of the Farm & Home Savings & Loan Association, Nevada, Missouri"); *United States Fidelity & Guaranty Co.* v. *Union Bank & Trust Co.,* 228 F. 448 (6th Cir. 1915) ("Walter S. Rainey, Circuit Court Clerk"); *Martin* v. *First National Bank of Rush City,* 51 F.2d 840 (D. Minn. 1931) ("Estate of Ernest L. Martin, Incompetent"); *Sayre* v. *Weil,* 94 Ala. 466, 10 So. 546 (1891) (D. Weil, trustee for the Goldman children); *Allen* v. *Puritan Trust Co.,* 211 Mass. 409, 97 N.E. 916 (1912) (Estate of Albert H. Bird, William L. Baker, Trustee); *Bischoff* v. *Yorkville Bank,* 218 N.Y. 106, 112 N.E. 759 (1916) (Estate of Josephine F. Schneider by H.F.W. Poggenburg, Executor); *Schofield* v. *Cleveland Trust Co.,* 149 Ohio 133, 78 N.E.2d 167 (1948) (W. M. Scofield, Trustee of the Estate of Levi T. Scofield); *Fidelity & Deposit Co. of Maryland* v. *Rankin,* 33 Okla. 7, 124 P. 71 (1912) (T.A. Neal, as clerk of the United States District Court for the First Judicial District of Oklahoma Territory); *United States Fidelity & Guarantee Co.* v. *Adoue & Lobit,* 104 Tex. 379, 137 S.W. 648 (1911) (A.J. Compton, Guardian); *Commercial State Bank* v. *Algeo,* 331 S.W.2d 84 (Tex. App. 1959) (account in name of "Hall Walker, Trustee," but Walker was vice-president, director and managing officer of bank); *Bacon* v. *Wright,* 52 S.W.2d 1111 (Tex. App. 1932) (W.S. Wright, guardian for Jimmie D. and Morris McSween,

minors); *Hall* v. *Windsor Savings Bank,* 97 Vt. 125, 121 A. 582 (1923) (J.C. Enright, Executor of Henry L. Story's Estate); *Brovan* v. *Kyle,* 166 Wis. 347, 165 N.W. 382 (1917) (Carroll Lucas, Guardian).

In these cases, in effect, the courts imposed liability on the bank because the specific name of the account put the bank on notice that the funds being used for the bank's benefit did not belong to the account holder. The same cannot be said where, as in this case, the name of the account indicates no more than that the funds therein may belong to the owner of the account, or to someone else. See *Titcomb* v. *Richter,* supra, 89 Conn. 230.

## II

The plaintiff advances, as alternative grounds on which to affirm the judgment of the trial court, the claims that, in light of the undisputed facts, the defendant is liable to the plaintiff on either of two legal theories: (1) conversion;[6] or (2) constructive trust. We are not persuaded.

"We have defined conversion as [a]n unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and

---

[6] Recognizing that the tort of conversion has traditionally been confined to chattels; but see *Omar* v. *Mezvinsky,* 13 Conn. App. 533, 537, 537 A.2d 1039, cert. denied, 208 Conn. 803, 545 A.2d 1100 (1988) (entrusted funds can be subject to conversion), and cases cited therein; the plaintiff argues that: (1) the "chattel" involved here is the defendant's internal debit and credit memo; or (2) failing that, we should expand our notion of what is subject to conversion to include intangible property rights such as the account at issue here. We need not resolve this claim in the context of this case, because we conclude that, even if we assume that the subject matter of the alleged conversion qualifies for the tort, the plaintiff cannot prevail on its conversion theory.

exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Internal quotation marks omitted.) *Moore* v. *Waterbury Tool Co.,* 124 Conn. 201, 209, 199 A. 97 (1938); see also *Falker* v. *Samperi,* 190 Conn. 412, 419, 461 A.2d 681 (1983); *Devitt* v. *Manulik,* 176 Conn. 657, 660, 410 A.2d 465 (1979); 1 Restatement (Second), Torts § 222A (1965); D. Wright & J. Fitzgerald, Connecticut Law of Torts (2d Ed. 1968) § 25 ("[a]n action of conversion is a suit for damages by the owner of a chattel or by one entitled to the immediate possession of the chattel, against one who has wrongfully appropriated the chattel . . . in derogation of the rights of the rightful owner or possessor").

Similarly, "a constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. 76 Am. Jur. 2d, Trusts, § 221, p. 446; see *Van Auken* v. *Tyrrell,* 130 Conn. 289, 291–92, 33 A.2d 339 [1943]." (Internal quotation marks omitted.) *Zack* v. *Guzauskas,* 171 Conn. 98, 103, 368 A.2d 193 (1976); see also *Brown* v. *Brown,* 190 Conn. 345, 349, 460 A.2d 1287 (1983) (constructive trust based upon unjust enrichment).

The tort of conversion and the equitable remedy of constructive trust share a common element: the party sought to be held liable has engaged in conduct that *wrongfully* has harmed the plaintiff. Both of these theories advanced by the plaintiff under the facts of this case, however, founder on this element. Having con-

cluded that the defendant is not liable to the plaintiff for Moyer's breach of trust under Connecticut law regarding the specific obligations of a bank as applied to this case; see *Titcomb* v. *Richter,* supra, 89 Conn. 226; we fail to see why the defendant ought nonetheless be held liable under more general tort or equitable principles. Under the facts of this case, the defendant did not engage in wrongful or unconscionable conduct, and was not unjustly enriched, by receiving the funds from Moyer's trust account in payment of Moyer's debts to the defendant.

The judgment is reversed, and the case is remanded with direction to render judgment for the defendant.

In this opinion KATZ, PALMER and SPEAR, Js., concurred.

BERDON, J., dissenting. The majority today holds that a bank is not liable to the beneficiary of a trust when the trustee draws from a trust account maintained at the bank, funds to pay the trustee's personal indebtedness owed to that bank. The defendant Union Trust Company, the depository and creditor bank, concedes that if the defalcating trustee did this by drawing a trust check on the bank to pay his personal indebtedness, it would be liable. Its only claim is that because the funds were electronically transferred *within* the bank—that is, the bank used a debit/credit memo to transfer the funds from the trust account to the bank itself to pay the trustee's personal indebtedness—no one person was put on notice that the funds were trust funds.

Recognizing that the defendant's argument is tenuous, the majority rejects the defendant's concession that it would be liable if the indebtedness had been paid by a trustee check. Instead, the court relies on *Titcomb* v. *Richter,* 89 Conn. 226, 93 A. 526 (1915), to support

the position that the bank was not placed on notice because the account was merely labeled as a trust account and not a trust account for a specific beneficiary.

Nevertheless, *Titcomb* is distinguishable. *Titcomb* involved a brokerage trustee account in the name of "Charles E. Morris, Trustee." The trustee, without authority of the beneficiary, breached his fiduciary duty by investing in speculative securities which resulted in a loss of $25,000. The plaintiff in *Titcomb* sought to hold the brokerage firm liable for the loss to the trust property. By contrast, in the present case the plaintiff merely seeks to hold the bank liable to the extent that it actually benefited from the defalcation of the trustee.

As a matter of law, to the extent that the bank benefited from the trustee's breach of fiduciary duty, it was put on notice that the funds used to pay the personal debt of the trustee were trust funds. "Where the bank seeks to apply the funds deposited to an indebtedness of the depositor individually to it, it is chargeable with notice that this would involve a breach of trust, although it would not be chargeable with such notice where it had no personal interest in the transaction but was acting merely as a depository." 4 A. Scott & W. Fratcher, Trusts (4th Ed. 1989) § 324.4, pp. 265–66. "The inference . . . is that the fiduciary is misapplying the funds when he uses them to discharge his personal indebtedness, and the bank is chargeable with notice that he is doing so. It is not proper for the bank to accept in payment of an individual indebtedness a check drawn by the debtor on his account as fiduciary in the same bank or in another bank, or a check payable to him as fiduciary and indorsed by him to the bank." Id., 268. Indeed, the "weight of authority in the United States . . . is . . . that the bank is liable to the extent that the trust funds so deposited in the trustee's personal account are used in paying the deposi-

tor's debt to the bank."[1] Id., 269. In 1994, there should be no difference that is legally relevant between drawing a check on the bank to pay an indebtedness to that bank and using an internal electronic transfer to accomplish the same result.[2]

The distinction drawn by Scott and Fratcher's treatise between transactions that benefit the bank and transactions that result in money irretrievably leaving the bank is sound. In *Titcomb,* the improperly invested trust funds were lost forever, so that if the brokerage firm had been held liable, it would have suffered a $25,000 loss despite an arguable lack of notice that there was any impropriety. By contrast, in the present case, to deny the bank the benefit obtained would merely return the bank to the status quo prior to the trustee's breach of his fiduciary duty; that is, the bank would have the same claim against the trustee individually for an outstanding loan that it had prior to his breach of fiduciary duty.

I would hold that the defendant was liable for its participation in the breach of trust to the extent that it benefited from the breach. Accordingly, I respectfully dissent.

---

[1] Even several of the cases the majority recites from other jurisdictions do not support its claim that an account in the name of a fiduciary clearly labeled as a fiduciary account, but without reference to the name of the beneficiary, does not put the bank on notice. See, e.g., *United States Fidelity & Guarantee Co.* v. *Adoue & Lobit,* 104 Tex. 379, 137 S.W. 648 (1911) (A.J. Compton, Guardian); *Commercial State Bank* v. *Algeo,* 331 S.W.2d 84 (Tex. App. 1959) (account in name of "Hall Walker, Trustee"); *Brovan* v. *Kyle,* 166 Wis. 347, 165 N.W. 382 (1917) (Carroll Lucas, Guardian).

[2] It is obvious that the majority is uncomfortable with its holding, which is predicated on *Titcomb* v. *Richter,* supra, 89 Conn. 226, but their opinion states that this court has "not been asked to overrule" *Titcomb.* The defendant, however, does not claim it relied on *Titcomb* to its detriment. Accordingly, to the extent that the holdings or dicta of *Titcomb* are inconsistent with the more persuasive view articulated by Scott and Fratcher in § 324.4 of their treatise, I would overrule it.