APPEARANCES:
On behalf of the Plaintiff:
LARRY R. LEVINE, ESQUIRE
CT Page 1323-KKK
28 Grand Street
Hartford, CT 06106
On behalf of the Defendant:
KEVIN M. DENEEN, ESQUIRE
20 Maple Avenue
Windsor, CT 06095
 DONNA L. PELUSO COURT REPORTER/MONITOR
THE COURT: All right. Then I intend to decide those issues now.
The motion to set aside the verdict is denied.
To deal with the defendant's claim in a different order than the defendant raises them in his motion to set aside the verdict, the Court finds no inconsistency in the jury verdict in favor of the defendant on the defendant's counterclaim, and the verdict in favor of the plaintiff on count one. Both sides conceded in oral argument that the defendant's counterclaim was valid to the extent of the $18,000 verdict that the jury delivered. It is true that there are some allegations in the counterclaim of the defendant, which, if the jury found as facts, might arguably be inconsistent with the first count of the defendant's — strike that — the plaintiff's complaint. The way the Court submitted the case to the jury, those allegations were not presented to the jury as predicate facts necessary to the jury verdict in favor of the defendant with respect to the $18,000 of overtime that the defendant was entitled to by everybody's testimony who testified on the subject. Both Mr. Yeakley and Mr. Pinkham testified in total agreement. And I have a transcript of my charge, that I reviewed with some care, not in conjunction with this issue as much as the issue which I'll deal with last, and that makes it clear that the jury needed to decide the counterclaim by preponderance of the evidence that had dealt with overtime in the amount of $18,000, and that that was admitted by the plaintiff and the Court then instructed on the standards to award interest. And so the only thing that the jury knew about the counterclaim was that, if they find by a preponderance of the evidence, that CT Page 1323-LLL Poquonock Mobil owed Mr. Pinkham $18,000 of overtime, they — and that, as I remember the evidence, that was admitted by everybody — then the jury should find for the defendant on the counterclaim in the amount of $18,000.
So a quick look at the pleading could give rise to that argument in the motion to set aside the verdict, but the way the Court presented the counterclaim to the jury, that is not possible, and that claim is without merit.
Similarly, the claim that the jury misapplied the law, as given it by the Court, based on the intent of the parties, the Court rejects. The jury obviously followed the instructions and found the facts necessary — which facts were in the evidence, should the jury care to have credited them — to find for the plaintiff on the first count.
That leads to another claim of the defendant that the verdict is against the evidence. And the Court finds that the jury could have found a confidential relationship between Poquonock Mobil, Inc., and Howard Pinkham. It is true that the employer/employee relationship does not necessarily imply the existence of such a relationship, and the jury was so charged in accordance with the defendant's request to charge, rather clearly, I think, and at some length. And the jury was free to accept the evidence as to the close relationship between Poquonock Mobil, Inc., its principal shareholder, and the defendant.
The Court does not think the verdict is excessive. It is on the high side. Were it a Court trial, I don't think I would have found the damages to have been quite that high. But I don't think that it was by any means excessive. At very least, the defendant's evidence was something in the nature of $150,000 plus, and, of course, the plaintiff's evidence was quite a bit more than that. So the jury found a value closer to the defendant's value than the plaintiff's value for the business when it came in with a verdict of $210,000 on the first count. So there is not merit, the Court concludes, to the claim that the verdict was excessive.
The final argument raised by the defendant in the motion to set aside the verdict is the most substantial, and it's the one raised first in the motion; and, that is, the claimed error in the Court's charge on constructive trust. Defendant had cited the appellate court case of Gulack v. Gulack, at 30 Conn. App. 305, CT Page 1323-MMM and pointed out, in its request to charge, that the appellate court has stated the elements of a constructive trust are the intent by a grantor to benefit a third person; second, the transfer of property to another who stands at a confidential relationship to the grantor, with the intent that the transferee will transfer the property to the third person, and the unjust enrichment, the third element, of the transferee, if the transferee is allowed to keep the property. Therefore, the defendant requested the Court to charge that the confidential relationship had to be between the transferor and the transferee.
In this case, the factual predicate necessary for the resolution of this question is that the franchise with Mobil, (the property that the plaintiff claimed was to be held by Mr. Pinkham in constructive trust for Poquonock Mobil) the franchise was never held by Poquonock Mobil, Inc., itself, since Mobil will not franchise a corporation, the evidence clearly showed. Rather, the franchise was in the name of Mr. Yeakley's, (the owner of Poquonock Mobil, Inc.) brother-in-law, and one time shareholder in Poquonock Mobil, Inc., Mr. Graybill, the holder of the franchise, transferred the franchise to Mr. Pinkham, and the evidence was undisputed.
The defendant asked for a charge that, to support the first count, a confidential relationship had to exist not between Poquonock Mobil, Inc., and Mr. Pinkham, the defendant, but between Mr. Graybill and Mr. Pinkham, the defendant. The Court went as far as it could toward the strict language of Gulack, and actually did charge that one key element of a constructive trust is the nature of the relationship between the grantor and the grantee of the property transferred. However, it is clear from the Court's charge that — immediately before that statement of the law, which does track the language of Gulack — the Court said that the third element of a constructive trust was the transfer of property to Mr. Pinkham when he stood in a confidential relationship to Poquonock Mobil.
And immediately after the paraphrase of the language from Gulack and the defense request to charge, the Court again told the jury: If you find that the plaintiffs have proved by clear and convincing evidence that there was an agreement that Mr. Pinkham would hold the lease and the franchise in constructive trust for the plaintiff, Poquonock Mobil, — remembering the definition of constructive trust that I just explained to you — you will, etc. It is absolutely clear that when I also CT Page 1323-NNN charged on the employer/employee relationship not necessarily implying a confidential relationship, that I was referring to Mr. Pinkham and Poquonock Mobil, so the defendant is absolutely correct when the defendant claims that the Court charged that the jury could find for plaintiff on the first count if the confidential relationship was between Poquonock Mobil, Inc., and Howard Pinkham. However, the Court, after considerable reflection, is convinced that that is a correct statement of the law.
The Gulack case is set in a specific factual circumstance, and it is, of course, a correct statement of the law, and if I didn't think it was, I'm still obligated to follow it. However, there is other authority for the proposition that in a fact pattern such as this, where Poquonock Mobil, in effect, asked Mr. Graybill to make the transfer to Mr. Pinkham, that there is no doubt in the Court's mind that a constructive trust can be imposed between Poquonock Mobil and Mr. Pinkham, and that Mr. Pinkham can be held liable for his breach of the agreement to hold that property in constructive trust.
So it is the Court's holding that the factual situation presented in Gulack does not encompass the full range of situations that can give rise to impositions of constructive trusts. Citing from Aetna Life Casualty v. Union Trust, at230 Conn. 779, at 791, our Supreme Court has instructed that "a constructive trust arises contrary to intention and in invitum against one who, by fraud, actual or constructive, by duress, orabuse of confidence by commission of wrong or by any form of unconscionable conduct, artifice, concealment or questionable means, or who, in any way, against equity and good conscience, either has obtained or holds the legal right to property which he ought not in equity and good conscience hold and enjoy." The appellant court, in Spatola v. Spatola, at 4 Conn. App. 79, at81, has also instructed that a constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form . . . "it also arises when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."
Vogert Law of Trusts, the sixth edition, in Section 77, page 287, advises that "whenever equity finds that one has title to property, real or personal, originally acquired by any kind of wrongdoing, or, although innocently obtained, now held under such CT Page 1323-OOO circumstances that retention of the title will result in unjust enrichment, equity may declare such title holder to be the trustee of a trust constructed by it for the purpose of working out justice, which is merely a convenient means of remedying a wrong."
Now, this case is different from a suit to impose a constructive trust. This is a suit for breach of an agreement to hold property in constructive trust; and, therefore, these citations are not precisely on point. Nonetheless, the claim of error in the Court's charge is in the Court's definition of constructive trust.
So, since the Court is convinced that its charge was not in error with respect to the law of constructive trust, the motion to set aside the verdict, as previously stated, is denied.
It is my intention to sign transcripts of these memoranda if there is an appeal filed, which I'm led to believe will be the case, but whatever time limits there are are running from today, and I won't order a transcript until I get a copy of the appeal, and I just didn't want there to be any confusion about time limits.
Now, I'm not inviting further argument, but if there are portions of either decision that are unclear, I'll hear counsel in an attempt to resolve any lack of clarity.
Plaintiff?
MR. DENEEN: Just one item. At one point you indicated that the franchise, prior to April 1, was held by Mr. Yeakley. Then you referenced him as his brother-in-law. It was Mr. Graybill. I believe it was just a —
THE COURT: I may well have misspoke. There is no question that Graybill was the person who transferred the franchise to Pinkham, and signed the lease and so forth. So I will amend the memorandum of decision, in that part, to substitute the "Graybill" for the word "Yeakley." I presume you agree it was a mistake.
MR. LEVINE: I don't have any problem with that.
THE COURT: Anything further? CT Page 1323-PPP
MR. DENEEN: That's it, your Honor.
The Honorable Joseph Q. Koletsky, Judge.
________________ Date
CERTIFICATE
I, Donna L. Peluso, Court Reporter/Monitor, certify that the foregoing is a true and accurate transcript of the proceedings had in the above-entitled case, before The Honorable Joseph Q. Koletsky, Judge.
This the 7th day of April, 1995.
 Donna L. Peluso COURT REPORTER/MONITOR
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 1323-UUU