[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE DATED SEPTEMBER 18, 2000
The plaintiff, Raymond Heche, filed a five count complaint against the defendant, Chase Manhattan Bank, on June 26, 2000.[1] The complaint alleges the following facts. The plaintiff was an attorney who practiced in Bridgeport, Connecticut. The defendant was a New York corporation, authorized to transact banking business in the state of Connecticut, with a branch office in Milford, Connecticut. Kimberly Snyder (Snyder) maintained a checking account with the defendant.[2] From about September 30, 1998, through August 27, 1999, the defendant accepted checks payable to itself, bearing the forged signature the plaintiff and tendered to the defendant, by Snyder, for deposit into Snyder's account. The plaintiff had no debt or obligation to the defendant. The defendant indorsed the checks and credited Snyder's account the total amount of the CT Page 9102 unauthorized checks, which was $46,380.29. Snyder drew on the full amount of the deposited checks for her own benefit. The defendant presented the checks to the plaintiff's bank, which debited the $46,380.29 from the plaintiff's account.
The defendant filed a motion to strike, with an accompanying memorandum of law, on September 18, 2000. The plaintiff filed an objection to the motion to strike on November 3, 2000. Both parties filed supplemental memoranda regarding the motion to strike.
"The motion to strike . . . replaced the demurrer in our practice. Its function, like that which the demurrer served, is to test the legal sufficiency of a pleading." RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 384, 650 A.2d 153 (1994). "The purpose of a motion to strike is to contest . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted."Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998)
 I
The defendant moves to strike count one, sounding in common law conversion, and count two, in statutory conversion under the UCC, on the ground that these counts are legally insufficient because, under the facts of the case, there was no conversion.
The UCC incorporates common law conversion and, thus, these two counts will be considered together. The relevant statute provides: "The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect, to the instrument for a person not entitled to enforce the instrument or receive payment." (Emphasis added.) General Statutes § 42a-3-420 (a). The use of the word "also" in the second sentence indicates that the statutory. action in conversion is supplementary. Consequently, an act that is not conversion under the UCC does not necessarily escape liability under the common law. See 2 J. White R. Summers, Uniform Commercial Code (4th
Ed. 1995) § 18-4, p. 217.
The defendant argues that the UCC does not permit a drawer of a check (the plaintiff) to bring an action in conversion against the depositary bank (the defendant) that accepted the check. The defendant relies upon General Statutes § 42a-3-420 (a) which, in relevant part, provides: "An action for conversion of an instrument may not be brought by . . . the issuer or acceptor of the instrument. . . ."[3]
CT Page 9103
The unusual facts of the present case require a brief history of the pertinent sections of the UCC. In 1991, Connecticut adopted major revisions to the UCC, including the provision on conversion originally contained in General Statutes § 42a-3-419.[4] The official comment to the new section on conversion, General Statutes § 42a-3-420, gives the following policy reasoning for the revisions. "Under former Article 3, the cases were divided on the issue of whether the drawer of a check with a forged indorsement can assert rights against a depositary bank that took the check. The last sentence of Section 3-420 (a) resolves the conflict by following the rule stated in Stone Webster EngineeringCorp. v. First National Bank Trust Co., 345 Mass. 1, 184 N.E.2d 358
(1962)." General Statutes § 42a-3-420, comment 1.
In Stone Webster Engineering Corp. v. First National Bank TrustCo., a drawer sought to bring an action against a depositary bank that cashed checks, which were never received by the payee, for an individual who had forged the. payee's indorsement on checks: Id., 2. The court affirmed the order sustaining the defendant's demurrer (similar to our motion to strike) because it found the plaintiff drawer had no right of conversion against the depositary bank. Id., 13. The court reasoned that a check represents an obligation of the plaintiff drawer who had no rights to the check as a holder. Id., 4. Furthermore, "[t]he amounts the defendant received from [payor bank] to cover the checks `cashed' were the bank's funds and not the plaintiff's." Id., 5. The drawer, consequently has no action in conversion, however, he does have an adequate remedy against the payor bank for recredit of the drawer's account of unauthorized payment of the check. Id., 9.
Since 1991, therefore, Connecticut statutes do not permit a drawer to bring an action against a depositary bank based on the reasoning in Stone Webster Engineering Corp. v. First National Bank Trust Co. "There is no reason why a drawer should have an action in conversion. The check represents an obligation of the drawer rather than the property of the drawer. The drawer has an adequate remedy against the payor bank for recredit of the drawer's account for unauthorized payment of the check." General Statutes § 42a-3-420, comment 1.
The drafters of the UCC and our legislators did not anticipate a situation like the present case. The potential for such a complication, however, has been recognized. "When one moves a few steps beyond theStone and Webster case, the prohibition of the drawer from suing in conversion presents 1difficulties. Assume that an authorized person draws a check payable to the order of his bank. This person is known to be a fiduciary and he causes the bank to deposit the check in his personal account. Under section 3-307 (b)(4) the bank is `on notice' . . . but CT Page 9104 [the section] fails to show the legal consequences of the notice. Perhaps the drafters intend such a bank to be liable to the drawer in conversion.[5] But as we note above, section 3-420 says specifically that the drawer has no cause of action in conversion. We are uncertain of the proper cause of action. . . . perhaps the last sentence of 3-420 (a) can be limited to the Stone and Webster situation or maybe the prohibition upon drawer as plaintiff could be limited to the cases stated in 3-420 (a) and ought not apply to the common law cases referred to in 3-420 (a)." 2 J. White R. Summers, supra, § 18-4, p. 220.
In the present case, the plaintiff does not make any allegation as to whether his former employee was a fiduciary. If she was, the authors of the text cited above indicate that the mandate of General Statute §42a-3-420 should, perhaps, not apply. This is a logical conclusion where the check is made payable to the depositary bank because the depositary bank no longer acts to pass through title on the check, as was described in Stone Webster Engineering Corp. v. First National Bank Trust Co., but instead accepts title to the check. The same conclusion applies to cases involving a malefactor who is not a known fiduciary. In these cases, the bank is on notice of illicit conduct when a person deposits a check, made payable to the bank, into the depositor's own account because the depositor is not an authorized signator or, as in the present case, the maker of the check. In both instances, whether the depositor is or is not a fiduciary, the UCC definition of conversion applies.[6]
The defendant argues that, if both the signature and the indorsement on the checks was unauthorized, the present case falls under the rule established in Perini Corp. v. First National Bank of Habersham County,553 F.2d 398 (5th Cir. 1977), in which liability falls on the drawee bank.[7] In Perini, "the court recognized the traditional rationale that depositary banks should bear the loss [for a forged indorsement] because they are in the best position to notice a flaw in the signature of the payee and to verify the credentials of the person depositing the check. Again, the court doubted the superior ability, under modern conditions, of the depositary bank to verify the payee's signature . . . The court acknowledged that in the case of a single forgery a depositary bank may be in a superior position to check the credentials of the person making the deposit. When a double forgery is involved, however, the superior ability of the depositary bank is diminished . . . The court concluded that, given the Code's policy in favor of finality and the diminished ability of the depositary bank to detect a forged indorsement when the check also bears a forged drawer's signature, a check bearing a double forgery should be treated like a check bearing only a forged drawer's signature. . . ." (Citations omitted.) National Credit UnionAdministration v. Michigan National Bank of Detroit, 771 F.2d 154, 157
(6th Cir. 1985) CT Page 9105
The complaint alleges that the checks bore. the forged and unauthorized signature of the plaintiff. The complaint also alleges the defendant's indorsement of the checks was unauthorized. Given these alleged facts, the finder of fact could determine that the defendant had no actual, implied or apparent authority to indorse the checks. If so, the case would be outside the Perini rationale because the defendant depositary bank, as the named payee, was in a superior position to detect the flaws of the checks compared to ability of the drawee bank.
No Connecticut appellate cases resolve the issue of whether the provision of General Statutes § 42a-3-420 should or should not apply under the facts of the present case. In Stamford Athletic Club, Inc. v.Union Trust Co., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 136922 (March 25, 1997, Karazin, J.) (19 Conn.L.Rptr. 308), a plaintiff brought an action in common law conversion against both the depositary and drawee banks for accepting checks made payable to cash and drawn on the plaintiff's account. The court granted the depositary bank's motion to strike on the ground that the express language of General Statutes § 42a-3-420 prohibits a drawer from bringing suit against a depositary bank. Id., 309. The present case can be distinguished in that the defendant was the payee on the checks and, as such, was in a position to detect the authenticity of the checks when they were presented for payment. The two cases cited by the plaintiff in support of his argument are also distinguishable from the case at hand. In Leaksealers v. Connecticut National Bank, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 517952 (June 20, 1995, Hennessey, J.), the court applied the pre-revision statute, General Statutes § 42a-3-419, when it determined that the plaintiff could sue the depositary bank for common law and statutory conversion. InBrookes v. New Haven Savings Bank, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 544390 (January 28, 1997,Hennessey, J.), the plaintiff alleged a CUTPA violation for, inter alia, conversion or wrongful withholding of the plaintiff's money. The court granted the defendant's motion to strike on the ground that the facts alleged were insufficient to rise to the level of a CUTPA violation. Id.
The unique facts of the present case put it at odds with the reasoning behind the current version of the conversion statute, General Statutes § 42a-3-420. This court adopts the suggestion of authors White and Summers and permits the plaintiff's cause of action in common law conversion. However, this court grants the motion to strike the cause of action in statutory conversion. Such a result would acknowledge both the statute's express provision, which prohibits drawers from bringing a cause of action in conversion tinder the UCC, and the facts of this case, which distinguish it from those cases upon which the statute was CT Page 9106 grounded. Furthermore, the plaintiff has sufficiently alleged a cause of action in common law conversion, which, in Connecticut, is "an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." AetnaLife Casualty Co. v. Union Trust Co., 230 Conn. 779, 790-91, 646 A.2d 799
(1994). For these reasons, the court denies the defendant's motion to strike count one, in common law conversion, because the plaintiff has plead sufficient allegations to establish a cause of action, and grants the defendant's motion to strike count two, in statutory conversion.
 II
The defendant moves this court to strike count three of the complaint, which alleges a violation of CUTPA, on the ground that the plaintiff's allegations are insufficient to establish a cause of action in conversion and, without conversion, there is no violation of CUTPA.
CUTPA provides that: "No person shall engage in unfair methods of competition and unfair or deceptive acts of practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). The Supreme Court has determined that CUTPA applies to the banking industry. NormandJosef Enterprises, Inc. v. Connecticut National Bank, 230 Conn. 486,521, 646 A.2d 1289 (1994). "[I]n determining whether an act or practice violates CUTPA [the court has] adopted the criteria set out in the cigarette rule by the federal trade commission for determining when an act or practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businessmen." Id., 522. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Id.
Count three of the plaintiff's complaint, which incorporates the allegations in count one under common law conversion and allege that the plaintiff was "greatly damaged," satisfies the first and third prongs of the cigarette rule for the purpose of the motion to strike. For this CT Page 9107 reason, the court denies the defendant's motion to strike count three of the plaintiff's complaint alleging a violation of CUTPA.
 III
The defendant moves to strike the plaintiff's request for relief in which the plaintiff seeks money damages, punitive damages, attorney's fees, interest and other relief available at law or equity. Count three, alleging a violation of CUTPA, is sufficient to support the plaintiff's request for relief and, therefore, the defendant's motion to strike the request for denied.
In its memorandum of law, the defendant did not present any grounds on which to base the motion to strike the request for relief. Under CUTPA, the plaintiff may be entitled to additional damages. "The court may, in its discretion, award punitive damages, and may provide equitable relief as it deems necessary or proper." General Statutes § 42-110g (a). The court may also award costs and reasonable attorney's fees, General Statutes § 42-110g (d). Willow Springs Condominium Assn., Inc. v.Seventh BRT Development, 245 Conn. 1, 40, 717 A.2d 77 (.1998). Because the court denies the motion to strike count three sounding in CUTPA, the court also denies the motion to strike the plaintiff's request for relief.
The court denies the motion to strike count one in common law conversion, grants the motion to strike count two sounding in conversion under the UCC, denies the motion to strike count three 1under CUTPA and denies the motion to strike the plaintiff's request for relief.
The Court
By
Moran, J.